IN THE CASE OF


UNITED STATES, Appellee

v.

Christopher B. WASHINGTON, Airman Basic
U.S. Air Force, Appellant

No. 01-0658

Crim. App. No. S29797

United States Court of Appeals for the Armed Forces

Argued March 19, 2002

Decided September 30, 2002


    EFFRON, J., delivered the opinion of the Court, in which
GIERKE and BAKER, JJ., joined.  BAKER, J., filed a concurring
opinion.  CRAWFORD, C.J., and SULLIVAN, S.J., each filed an
opinion concurring in part and dissenting in part.


<u>Counsel</u>


For Appellant:  <u>Major Maria A. Fried</u> (argued); <u>Lieutenant Colonel Beverly B.
Knott</u>, <u>Lieutenant Colonel Timothy W. Murphy</u> (on brief); and <u>Major Jeffrey A.
Vires</u>.

For Appellee:  <u>Captain Christa S. Cothrel</u> (argued); <u>Colonel Anthony P.
Dattilo</u>, and <u>Lieutenant Colonel Lance B. Sigmon</u> (on brief); <u>Major Jennifer R.
Rider</u>.


Military Judge:  Roger A. Drew, Jr.


<u>This opinion is subject to editorial correction before final publication</u>.

Judge EFFRON delivered the opinion of the Court.

A special court-martial composed of officer and enlisted members convicted appellant, contrary to his pleas, of willfully disobeying a lawful order given by a superior commissioned officer, in violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 USC § 890. He was sentenced to a bad-conduct discharge and confinement for two months. The convening authority approved these results, and the Court of Criminal Appeals affirmed. 54 MJ 936 (2001).

On appellant's petition, we granted review the following issues:

> I. WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE EXCLUDED RELEVANT EVIDENCE REGARDING THE SAFETY AND EFFICACY OF THE ANTHRAX VACCINE WHICH WAS NECESSARY TO APPELLANT'S AFFIRMATIVE DEFENSE UNDER R.C.M. 916(h).
>
> II. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN ITS APPLICATION OF ARTICLE 66(c) WHEN IT CONCLUDED THAT APPELLANT WAS NOT ENTITLED TO A PRESUMTION OF INNOCENCE.
>
> III. WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ABUSED ITS DISCRETION WHEN IT AFFIRMED APPELLANT'S SENTENCE DESPITE THE AIR FORCE'S DE FACTO POLICY THAT ANTHRAX REFUSAL CASES WILL BE DISPOSED OF BY NONJUDICIAL PUNISHMENT AND ADMINISTRATIVE DISCHARGE.

For the reasons set forth below, we remand to the Air Force Court of Criminal Appeals for further consideration of Issue II.

## I. LITIGATION AT TRIAL CONCERNING THE ORDER TO RECEIVE THE ANTHRAX VACCINATION

### A. BACKGROUND

Anthrax is an infectious animal disease that can be employed as a deadly biological weapon. Over the last decade, the Department of Defense (DoD) has focused attention on the possibility that such weapons might be used against deployed U.S. forces. As a countermeasure, DoD, for a period of time, implemented a program involving widespread vaccination of U.S. military personnel. The program subjected numerous members of the armed forces to a series of six vaccinations designed to counter the effects of any exposure to anthrax.

Appellant, who was stationed in the United States, received five of the six vaccinations without objection. In 1999, he was deployed to Saudi Arabia, where he declined to receive the sixth vaccination. On December 21, his squadron commander ordered him to receive the required vaccination. Appellant refused to obey the order, and he received nonjudicial punishment under Article 15, UCMJ, 10 USC § 815, for disobedience of the order. The nonjudicial punishment consisted of reduction from pay grade E-4 to E-1 and a suspended forfeiture of $483.00 per month for two months.

Appellant's commander issued appellant a new order on January 7, 2000, directing that he receive the anthrax

vaccination within 24 hours. On January 8, appellant informed his commander that he would not obey the order. Appellant's refusal occurred after he had considered articles in the media and testimony in congressional proceedings raising questions about the safety and effectiveness of the anthrax vaccine.

Appellant was charged with a violation of Article 90, UCMJ, which prohibits willful disobedience of a lawful order from a superior commissioned officer. The charge was referred to a special court-martial. During pretrial proceedings, the prosecution asked the military judge to rule that the order was lawful. The defense expressly stated that it would not contest the lawfulness of the order. The military judge ruled that the order was lawful, and he advised the parties that he would so instruct the members of the court-martial.

The prosecution then moved to preclude the defense from introducing evidence challenging the safety and effectiveness of the vaccination program. The defense objected, contending that such evidence was central to the defense case, which would be based upon the defenses of duress and necessity. The military judge granted the prosecution's motion. The military judge indicated that the defense of duress was unavailable because it requires an unlawful threat from a human being, and that the defense of necessity was unavailable because it requires a threat from a natural physical force -- neither of which was

present in this case.  The military judge reasoned, in effect, that any threat to appellant's health came from human implementation of a lawful policy decision, not from an unlawful threat or a natural physical force.  On appeal, appellant contends that the military judge committed prejudicial error by not permitting him to present pertinent evidence regarding the defenses of duress and necessity.

## B. DISCUSSION

In United States v. Rockwood, 52 MJ 98 (1999), we considered the nature of the duress defense in the military justice system, as well as the question of whether the defense of necessity is available in courts-martial.  With respect to duress, we observed: (1) "[c]lassically, duress was seen as a defense to crime if the defendant was compelled or coerced to commit the crime by some human agency, under a threat of serious imminent harm to the defendant or others"; (2) "[f]or the defense of duress to apply, the crime committed must have been of lesser magnitude than the harm threatened"; (3) "the duress must [have] consist[ed] of threatening conduct which produced in the defendant . . . a reasonable fear of . . . immediate (or imminent) . . . death or serious bodily harm"; and (4) "[a]n obviously safe avenue of escape before committing the prohibited act nullifies the defense."  Id. at 112 (citing 1 Wayne R.

LaFave & Austin W. Scott, Jr., Substantive Criminal Law 614-27 (1986); Rollin M. Perkins & Ronald N. Boyce, Criminal Law 1959-65 (3d ed. 1982); United States v. Vasquez, 48 MJ 426, 429-30 (1998)(internal quotations and emphasis omitted)).

With respect to the defense of necessity, we noted: (1) necessity "was traditionally seen as a choice of evils defense" in which "the pressure of circumstances was not brought by human agency, but by the situation itself"; and (2) "[t]he defendant's belief that his actions were necessary must have been reasonable, and there must have been no alternative that would have caused lesser harm."  Id. at 112 (citing 1 LaFave & Scott, supra, at 627-31, 635, 638; Perkins & Boyce, supra, at 1069; United States v. Bailey, 444 U.S. 394, 410 (1980)(footnote and internal quotations omitted)).

In our discussion of applicable military law, we took note of R.C.M. 916(h), Manual for Courts-Martial, United States (2000 ed.)[*] which provides for the defense of duress.  We also observed that the defense of necessity was not specifically provided for in the Manual for Courts-Martial, and that under the circumstances of the case it was unnecessary to decide whether, as a matter of law, it should be available in the military justice system.  Id. at 113-14.

---

[*] All Manual provisions cited are identical to those in effect at the time of appellant's court-martial.

Appellant places primary reliance on R.C.M. 916(h), which states:

> It is a defense to any offense except killing an innocent person that the accused's participation in the offense was caused by a reasonable apprehension that the accused or another innocent person would be immediately killed or would immediately suffer serious bodily injury if the accused did not commit the act. The apprehension must reasonably continue throughout the commission of the act. If the accused has any reasonable opportunity to avoid committing the act without subjecting the accused or another innocent person to the harm threatened, this defense shall not apply.

Appellant contends that a plain reading of the text provides a defense to a charge of disobeying a lawful order if the accused had a reasonable belief that compliance with the order would result in death or serious bodily injury to the accused or another person. According to appellant, the military judge erred in two respects: first, by grafting onto the rule a requirement that the duress result from the unlawful threat of a human being; and second, by declining to consider the necessity defense in the absence of a threat imposed by a natural physical force.

Appellant's narrow reading of R.C.M. 916(h) would permit a member of the armed forces to disobey a lawful order if the servicemember had a reasonable apprehension that he or she, or

another innocent person, would immediately be killed or suffer serious bodily injury if he or she complied with the order. Such an interpretation suggests that the President designed the rule to alter one of the core values of military service -- the willingness of the individual to sacrifice his or her life or well-being for the sake of the nation. As the Supreme Court has emphasized, "[t]he essence of military service 'is the subordination of the desires and interests of the individual to the needs of the service.'" Goldman v. Weinberger, 475 U.S. 503, 507 (1986)(quoting Orloff v. Willoughby, 345 U.S. 83, 92 (1953)).

The requirement to place the needs of the nation above a servicemember's personal welfare applies in peacetime as well as in war. "[I]t is the primary business of armies and navies to fight or be ready to fight should the occasion arise." United States v. ex rel. Toth v. Quarles, 350 U.S. 11, 17 (1955). Every day, members of the armed forces engage in operational missions or training activities in which there is a risk of death or serious bodily injury to themselves or others. Although the armed forces rely on unit cohesion and leadership to foster a willingness to undertake such risks, legal sanctions are available to promote obedience should positive measures prove insufficient. Congress has expressly provided criminal sanctions in Article 90, UCMJ, as well as Articles 91 and 92,

UCMJ, 10 USC §§ 891 and 892, for failure to obey a lawful order, including authority in Article 90(2) for capital punishment in time of war for disobedience of the lawful order of a superior commissioned officer.

The President's guidance with respect to the disobedience offenses embodies longstanding military law. "An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." Paragraph 14c(2)(a)(1), Part IV, Manual, supra. "The order must relate to military duty, which includes all activities reasonably necessary to accomplish a military mission, or safeguard or promote the morale, discipline, and usefulness of members of a command and directly connected with the maintenance of good order in the service." Id. at para. 14c(2)(a)(iii). When a commander gives an order that is reasonably necessary to accomplish the mission -- including an order involving protective measures, such as defensive positioning, wearing protective armor, or taking a vaccine to counter a biological weapon -- the servicemember is obligated to obey or face punishment under Articles 90, 91, or 92, UCMJ. If servicemembers could disobey lawful orders to participate in military training or operations out of a reasonable apprehension that they or others might suffer death or serious bodily injury,

the President's guidance in paragraph 14c(2)(a) Part IV, Manual, supra, would be rendered meaningless.

In light of the foregoing, it would be inappropriate to read the President's guidance on the duress defense in R.C.M. 916(h) Manual, supra, in isolation. Instead, it must be read in conjunction with the guidance on disobedience of lawful orders and the essential purposes of military law. In that context, the military judge correctly ruled that the duress defense in R.C.M. 916(h) should be viewed in a manner consistent with the requirement in prevailing civilian law that the threat emanate from the unlawful act of another person. Likewise, if the defense of necessity applies in the military justice system -- a question which we need not resolve at this time -- similar considerations would call for an application of the prevailing civilian doctrine regarding the requirement for the necessity to arise from a natural force, as opposed to a human action.

As we noted in Rockwood, supra, "[t]here may indeed be unusual situations in which an assigned military duty is so mundane, and the threat of death or grievous bodily harm . . . is so clearly defined and immediate, that consideration might be given to a duress or necessity defense." 52 MJ at 114. This is not such a case. The evidence offered at trial demonstrated that the vaccination program was designed and implemented as a defensive measure in the face of a significant military threat.

Assuming the validity of the data provided by appellant concerning the risk of adverse effects from the vaccination, such information does not demonstrate that the purpose of the vaccination program was "mundane" or that such risks were so immediate and widespread as to undermine its purpose.

The foregoing discussion is based on the premise -- not challenged by appellant in this case -- that the order was lawful. A servicemember charged with a disobedience offense may challenge the lawfulness of the order on a variety of grounds, e.g., that the order directed the commission of a crime; that the issuing officer lacked authority; that the order did not relate to a military duty; that it interfered with private rights or personal affairs without a valid military purpose; that it was solely designed to achieve a private purpose; that it conflicted with a person's statutory or constitutional rights. See para. 14c(2)(a)(i)-(iv), Part IV, Manual, supra; United States v. New, 55 MJ 95 (2001). In the present case, however, appellant chose not to challenge the lawfulness of the order he received to participate in the anthrax vaccination program. Accordingly, we have no occasion in this case to determine whether the program is based upon lawful authority or whether there are other legal grounds for questioning the program. Based on the foregoing, we resolve this issue against appellant.

11

II. APPLICABILITY OF THE PRESUMPTION OF INNOCENCE
DURING INTERMEDIATE APPELLATE REVIEW UNDER ARTICLE 66(c)

A. BACKGROUND

Article 66(c), UCMJ, 10 USC § 866(c) provides:

> In each case referred to it, the Court of
> Criminal Appeals may act only with respect
> to the findings and sentence as approved by
> the convening authority.  It may affirm only
> such findings of guilty and the sentence or
> such part or amount of the sentence, as it
> finds correct in law and fact and
> determines, on the basis of the entire
> record, should be approved.  In considering
> the record, it may weigh the evidence, judge
> the credibility of witnesses, and determine
> controverted questions of fact, recognizing
> that the trial court saw and heard the
> witnesses.


Article 66(c) requires the Courts of Criminal Appeals to conduct a de novo review of legal and factual sufficiency of the case.  See United States v. Cole, 31 MJ 270, 272 (CMA 1990). The court may affirm a conviction only if it concludes, as a matter of factual sufficiency, that the evidence proves appellant's guilt beyond a reasonable doubt.  United States v. Sills, 56 MJ 239, 240-41 (2002); United States v. Turner, 25 MJ 324, 324-25 (CMA 1987).  Although the court in the present case discussed the theoretical basis for a lesser standard of proof, it ultimately concluded that the evidence was sufficient to demonstrate appellant's guilt beyond a reasonable doubt, thereby

12

mooting any impact from its discussion of the lesser standard.
See 54 MJ at 941.

In the course of its discussion of factual sufficiency, the
court also rejected appellant's suggestion that appellate review
for factual sufficiency under Article 66(c), UCMJ, required the
court to apply the "presumption of innocence." Id. at 940. The
"presumption of innocence" is a longstanding feature of both
military and civilian law and is set forth in the statutory
requirement that, prior to findings, the members of a court-
martial must be instructed "that the accused must be presumed to
be innocent until his guilt is established by legal and
competent evidence beyond a reasonable doubt." See Art.
51(c)(1), UCMJ, 10 USC § 851(c)(1). The instruction, which does
not literally employ a presumption, reminds the members of a
critical fact -- that the accused, as a matter of law, is
innocent unless the members are satisfied the prosecution has
proved each required element of the offense beyond a reasonable
doubt. See 1 Barbara E. Bergman & Nancy Hollander, Wharton's
Criminal Evidence, §§ 2:2, 3:10, at 23, 169-70 (15th ed. 1997).
As a practical matter, the presumption of innocence serves to
underscore the instruction that the members may not presume that
the defendant is guilty simply because charges have been
referred to trial. See Military Judges' Benchbook, Dept. of the
Army Phamphlet 27-9 (Sept. 30, 1996) at 2-5.

13

At the appellate level, different considerations apply. The Court of Criminal Appeals is required to conduct a de novo review of the entire record of a trial, which includes the evidence presented by the parties and the findings of guilt. Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses.

In the performance of its Article 66(c), UCMJ, functions, the Court of Criminal Appeals applies neither a presumption of innocence nor a presumption of guilt. The court must assess the evidence in the entire record without regard to the findings reached by the trial court, and it must make its own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt. In contrast to the lay members who serve on courts-martial, the mature and experienced judges who serve on the Courts of Criminal Appeals are presumed to know and apply the law correctly without the necessity of a rhetorical reminder of the "presumption of innocence."

In addition to reminding the fact-finder to not employ a presumption of guilt, the presumption of innocence also reflects allocation of the burden of proof. See Bell v. Wolfish, 441

U.S. 520, 533 (1979)(citing Taylor v. Kentucky, 436 U.S. 478, 485 (1978)). During review under Article 66(c), UCMJ, an appellant does not bear the burden of raising doubts about the trial-level finding of guilty. If the decision of the Court of Criminal Appeals raises substantial questions as to whether there has been an appropriate allocation of the burden, our Court cannot rely on the presumption that the court below applied the law correctly, and a remand is required to ensure that the court below applies a level playing field. See United States v. Troutt, 8 USCMA 436, 439, 24 CMR 246, 249 (1957). The opinion of the court below in the present case raises such questions. Instead of describing the approach that it would apply in lieu of the presumption of innocence, the court below cited Herrera v. Collins, 506 U.S. 390 (1993). 54 MJ at 941. Herrera, however, involved the appellate issue of whether federal habeas corpus relief is appropriate in light of newly discovered evidence – an issue under which the convicted person faces a very heavy burden in terms of raising doubts about his guilt. Herrera, 506 U.S. at 417. The lower court's reliance on Herrera raises the question of whether the court erroneously placed the burden on appellant to raise doubts about his guilt. Although the lower court does not need the reminder of a presumption of innocence in order to perform its Article 66(c), UCMJ, review, we must be assured on appeal that the court did

15

not improperly shift the burden to appellant to raise doubts about his guilt, which would indicate "application of an erroneous principle of law." Troutt, 8 USCMA at 439, 24 CMR at 249. A limited remand is appropriate in the present case to ensure that the court below has applied the correct principles of law. See United States v. Hutchison, 57 MJ 231 (2002).

## III. REVIEW OF APPELLANT'S SENTENCE BY THE COURT OF CRIMINAL APPEALS

Before the Court of Criminal Appeals, appellant introduced information concerning the disposition of other anthrax-related cases in the Air Force. The information indicated that disciplinary action had been taken in "just over 150 Air Force cases" involving refusal to take the anthrax vaccine. Some of the cases involved repeat offenders. Of the six individuals whose cases were referred to summary courts-martial, all eventually were given an administrative discharge. One of the six cases was referred to a special court-martial after the accused objected to a summary court-martial under Article 20, UCMJ, 10 USC § 820, and he subsequently requested and was granted an administrative discharge in lieu of court-martial. One officer, who was offered nonjudicial punishment under Article 15, UCMJ, requested trial by court-martial, and his case

was pending at the time appellant's case was under review at the Court of Criminal Appeals.  See 54 MJ at 942-43.

The Court of Criminal Appeals identified specific aspects of appellant's case which it viewed as significant on the issue of sentence appropriateness, including a letter of counseling for reporting late for duty, a letter of reprimand for similar misconduct on a different date and for insubordinate conduct towards a noncommissioned officer, and negative comments in the performance report he received prior to deployment.  Id. at 943. The court also took note of "substantial evidence that . . . appellant was motivated to refuse the inoculation, not because of his concern for the effects of the vaccine upon his body, but because he wanted to return to Barksdale Air Force Base to operate a trucking business he had been running during his off-duty hours before he deployed."  Id.  The court, noting that it had considered "all the facts and circumstances surrounding the commission of the offense, as well as the character of . . . appellant and the matters in the record of trial," concluded that the sentence was appropriate.  Id.

In the present appeal, appellant contends that the lower court abused its discretion by not granting relief on the basis of sentence appropriateness.  Appellant does not contend in this appeal that he is the subject of discriminatory or selective

prosecution.  Compare United States v. Garwood, 20 MJ 148, 154 (CMA 1985).

The information submitted by appellant to the Court of Criminal Appeals reflects a variety of discretionary dispositions by Air Force commanders over both a relatively brief period of time and a small number of cases.  In reviewing a case for sentence appropriateness, the Courts of Criminal Appeals are not required to compare appellant's case to other specific cases unless the appellant demonstrates that his or her case is closely related to the case or cases offered for comparison.  The mere similarity of offenses is not sufficient. See United States v. Wacha, 55 MJ 266, 267-68 (2001).

In our review of sentence appropriateness decisions by the Courts of Criminal Appeals, we determine whether the lower court "abused its discretion or caused a miscarriage of justice" in exercising its highly discretionary sentence review function. Id. at 268 (citing United States v. Fee, 50 MJ 290, 291 (1999)). In the present case, the court below considered both the data provided by appellant and the specific circumstances of appellant's case.  The court's delineation of the factors pertinent to its exercise of this highly discretionary function did not constitute either an abuse of discretion or a miscarriage of justice.

## IV. CONCLUSION

The decision of the United States Air Force Court of Criminal Appeals is set aside.  The record of trial is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for further consideration of Issue II in accordance with this opinion.  Thereafter, the record of trial shall be returned directly to this Court.

United States v. Washington, No. 01-0658/AF

BAKER, Judge (concurring):

I agree with the majority on Issue I that appellant did not reasonably raise a defense of duress or necessity, but I feel it is unnecessary to redefine those defenses, or establish their factual predicates, in the context of this case.  On Issue II, I agree with the limited remand, but write separately to communicate my views regarding one of the principle foundations of criminal law.  Finally, I agree with the majority on Issue III.

I.

A military judge is required to instruct members on the defense of duress when the defense is reasonably raised by some evidence.  United States v. Williams, 21 MJ 360, 362 (CMA 1986); United States v. Rankins, 34 MJ 326, 328 (CMA 1992).  The same is true of the necessity defense, to the extent such a defense exists in military law.  Rankins, 34 MJ at 328.  The Supreme Court summarized the rationale behind this two-part test in United States v. Bailey,

> precisely because a defendant is entitled to have the credibility of his testimony, or that of witnesses called on his behalf, judged by the jury, it is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if the jury finds it to be true, it would support an affirmative defense -- here that of duress or necessity.

444 U.S. 394, 415 (1980).

In criminal law systems where members and juries adjudicate facts, there are good reasons why "[r]uling on a defense as a matter of law and preventing the jury from considering it should be a rare occurrence in criminal cases." Id. at 435 (Blackmun, J., dissenting). The same reasoning applies to a trial before a judge alone. If some evidence reasonably raises a duress or necessity defense, then an accused should have the opportunity to put on a full defense and have the judge or members assess the defense as the trier of fact. With such a standard, in theory, it should be a rare event when such a defense is not presented to the trier of fact. This is such a case.

Appellant conceded that the order to undergo anthrax inoculation was lawful. He took five of six anthrax shots without adverse reaction. The materials from the Internet, on which appellant based his defense, were not relevant to appellant's situation; they were not connected to his health or to his profile.[1]  As a result, whether cast as a duress or necessity defense, neither defense was reasonably

---

[1] The circumstances might have been different had appellant concretely demonstrated his presence in a defined class of risk:  a soldier deathly allergic to penicillin ordered to take penicillin or a soldier allergic to eggs ordered to take an egg-based vaccine. The majority opinion seems to suggest that neither a duress nor a necessity defense would be available in such cases because the predicate for the defense would not arise from a human action or a natural force.  The majority opinion also suggests that a defense would only be available if taking such a vaccine were considered "mundane."  These are issues we need not

raised by appellant; therefore, we need not decide whether appellant was making a duress or necessity argument, or ultimately, whether the necessity defense is available in the military system of justice. In the absence of a definitive textual argument, I am inclined to think that the necessity defense is available for the reasons stated by Judge Wiss in Rankins. Rankins, 34 MJ at 336-40 (Wiss, J., dissenting). But surely, as well, for the reasons stated in United States v. Rockwood, 52 MJ 98, 107-12 (1999), in a military context, the defense is far more likely to arise in law school hypotheticals, than in the reality of military service, and then only where the flouting of military authority is not involved. It is for these reasons, perhaps, that this court has circled around the necessity defense, not sure whether to pull the defense fully on board, but not willing to cast it fully adrift, lest its presence is required on deck in unforeseeable circumstances.

## II.

The presumption of innocence is a critical part of our tradition of justice. It is deeply imbedded in our culture as well as in our systems of justice. It is a virtue of

---

consider or decide in this context where, in any event, the defenses were not reasonably raised.

democratic society and can be an expression of American optimism. It finds its way into the vernacular of everyday relationships, between parent and child, teacher and student, as well as in our legal relationships. In the courtroom, the presumption of innocence means not only that the Government bears the burden of proving every element of crime beyond a reasonable doubt, but that the trier of fact -- panel, jury, or judge -- approaches the case without negative predisposition drawn from the accused's presence in the courtroom. Indeed, to guard against such disposition, juries are instructed to adopt an affirmative assumption of innocence.

Not surprisingly, the reasonable doubt standard and the presumption of innocence are tightly intertwined, but not inextricably so. The Supreme Court has described the "presumption of innocence" as a "shorthand description of the right of the accused to 'remain inactive and secure, until the prosecution has taken up its burden and produced evidence and effected persuasion. . . .'" Taylor v. Kentucky, 436 U.S. 478, 485 n.12 (1978). Beyond a reasonable doubt is the measure of the prosecution's burden. But the presumption of innocence is a trial level construct. As a matter of law and logic, it does not migrate from the courtroom to military appellate chambers.

4

United States v. Washington, 01-0658/AF

The Air Force Court of Criminal Appeals relies on Herrera v. Collins, 506 U.S. 390 (1993), to make its case; however, Herrera is not controlling precedent in a military justice system where Courts of Criminal Appeals exercise unique de novo powers of factual review.  See Article 66(c), Uniform Code of Military Justice (UCMJ), 10 USC § 866(c); United States v. Crider, 22 USCMA 108, 110-11, 46 CMR 108, 110-11 (1973).  However, Supreme Court precedent involving civilian proceedings is informative in tracing the derivation of the "presumption of innocence" as a trial mechanism.  In Taylor, the Court observed that the "admonition derives from a perceived salutary effect upon lay jurors."  Taylor, 436 U.S. at 484.  In Bell v. Wolfish, 441 U.S. 520 (1979), the Court noted that the "presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody, or from other matters not introduced as proof at trial."  Bell, 441 U.S. at 533. This same precedent demonstrates that the presumption of innocence is tied to principles of due process, but is not derived from an independent constitutional requirement.

5

Thus, in Taylor, the Court held that "on the facts of this case the trial court's refusal to give petitioner's requested instruction on the presumption of innocence resulted in a violation of his right to a fair trial as guaranteed by the Due Process clause of the Fourteenth Amendment." Taylor, 436 U.S. at 490 (emphasis added). As a result, the presumption cannot be said to flow from a principle of law that would override the language of Article 66(c), UCMJ, or this Court's long-standing interpretation of that responsibility that has neither acknowledged nor rejected an appellate presumption of innocence, but that has required Courts of Criminal Appeals to independently review courts-martial records free from factual assumptions or presumptions.

Article 66(c), UCMJ, does not textually incorporate a presumption of innocence: "In considering the record, [the Court of Criminal Appeals] may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." "Weigh the evidence" comes without textual presumption. In contrast, deference for the trial court having seen and heard the witnesses arguably incorporates a presumption in the direction of the trial outcome appealed.

6

United States v. Washington, 01-0658/AF

Nor is an appellate presumption of innocence found in military case law. The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the Court of [Criminal Appeals] are themselves convinced of the accused's guilt beyond a reasonable doubt." United States v. Turner, 25 MJ 324, 325 (1987). The Courts of Criminal Appeals have been referred to as a "thirteenth juror." United States v. Schlegel, 7 MJ 773, 775 (ACMR 1979)(Mitchell, S.J., concurring in part and dissenting in part). See also Tibbs v. Florida, 457 U.S. 31, 42 (1982). But that is a confusing analogy in this context. For the Courts of Criminal Appeal do not in fact sit as a juror or military judge, observing the witnesses, and with a predisposition of innocence.[2] When questions of law are concerned, for example, Courts of Criminal Appeal consider the evidence "in the light most favorable to the prosecution." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

_____

[2] A Court of Criminal Appeals' "fact-finding powers in determining the degree of guilt to be found on the record [may be] more apposite to the action of a trial court than to an appellate body," but that does not mean the presumption of innocence applies anymore than it means the rules regarding speedy trial apply to de novo appellate review. United States v. Crider, 22 USCMA 108, 111, 46 CMR 108, 111 (1973).

Further, as a matter of logic, a panel or military judge has already adjudicated the case.  There is a finding of guilt.  The law necessarily incorporates presumptive constructs.  Judges are presumed to know the law, until demonstrated otherwise.  United States v. Prevatte, 40 MJ 396, 398 (CMA 1994).  Juries are presumed to follow instructions, until demonstrated otherwise.  United States v. Holt, 33 MJ 400, 408 (CMA 1991).  But the law does not expect the Courts of Criminal Appeals to disregard the trial, which is, after all, what they are asked to review under the Turner and Jackson standards.  This is an artificial construct too far.  Nor do appellate judges, constrained by Turner and Jackson, require admonishment to preserve the Government's burden of proof.  What the law requires, as Crider demonstrates, is a de novo review of the facts free from a presumption of guilt and subject to a burden of proof beyond a reasonable doubt.  Crider, 22 USCMA at 111, 46 CMR at 111.

United States v. Washington, No. 01-0658/AF

CRAWFORD, Chief Judge (concurring in part and dissenting in part):

I agree with the majority as to Issues I and III, and its rationale as to Issue II, but part company as to a remand. The judges on the Court of Criminal Appeals (CCA) cited dicta in Herrera v. Collins, 506 U.S. 390, 399 (1993), as follows: "Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears...." This correct statement of the law, even though in a habeas corpus case, does not rebut the presumption that the judges below knew and applied the law correctly in this case. See, e.g., United States v. Prevatte, 40 MJ 396, 398 (CMA 1994); United States v. Montgomery, 20 USCMA 35, 39, 42 CMR 227, 231 (1970).

The presumption of innocence is not strictly speaking, a presumption in the sense of an inference deduced from a given premise, "but an assumption of innocence since the prosecution has the burden of persuasion with regard to the defendant's guilt." See Harold A. Ashford & D. Michael Risinger, Presumptions, Assumptions and Due Process in Criminal Cases, A Theoretical Overview, 79 Yale L.J. 165, 173 (1969). See also 9 John H. Wigmore, Evidence in Trials at Common Law § 2511 at 530 (Chadbourn rev. 1981). Professor J. Thayer recognized that the presumption "is not evidence -- not even an inference drawn from

a fact and evidence -- but instead is a way of describing the prosecution's duty" to prove the guilt of the defendant at trial. Taylor v. Kentucky, 436 U.S. 478, 483 n.12 (1978).

"In contrast to the lay members who serve on courts-martial, the mature, experienced judges who serve" on the CCAs are well-suited to perform their statutorily mandated Article 66(c)[1] review without employing a rhetorical "presumption of innocence" reminder. ___ MJ (14-15). The beyond a reasonable doubt standard assures that the burden does not shift to an appellant, thereby creating a level playing field without further reminder of the burdens of proof and burdens of persuasion to these able judges. Surely we do not require appellate judges to list mechanically in every case the items they did not consider, e.g., arrest, investigation pursuant to Article 32,[2] when applying the factual sufficiency test. Presumptions of guilt or innocence are inconsistent with the requirement of both United States v. Turner, 25 MJ 324 (CMA 1987), and Jackson v. Virginia, 443 U.S. 307 (1979), that the Government prove the case beyond a reasonable doubt, and have no place in appellate practice. Accordingly, the court's rejection of appellant's request to apply a "presumption of innocence" did

---

[1] Uniform Code of Military Justice (UCMJ), 10 USC § 866(c).
[2] UCMJ, 10 USC § 832.

not constitute error or create an ambiguity requiring re-examination.

As the majority correctly notes, the CCA applies neither a presumption of innocence nor a presumption of guilt.  The dicta from Herrera cited by the CCA correctly reflect the long-standing view that the presumption of innocence is a trial-level device and a means of allocating the burdens of proof.  That is, that the Government has the burden of producing evidence of guilt and must persuade the fact finder beyond a reasonable doubt.  However, the presumption of innocence disappears following a conviction at trial, without regard to whether that conviction is attacked via a direct appeal or a habeas corpus petition.  In Herrera, the Supreme Court held that there was no violation of due process by the state's reliance on a time limit to refuse to consider newly discovered evidence, even though such evidence would establish "actual innocence" of the offense for which the defendant had been sentenced to death.  506 U.S. at 404.  The dicta cited by the CCA from Herrera is consistent with the basic historical fact that the "assumption of innocence" only applies at the trial level.  Further, the dicta cited by the CCA correctly reflect the burdens and the presumptions at the trial level and what happens on appeal, whether a direct appeal or a habeas corpus petition.

3

Other than noting that Herrera involved a federal habeas corpus issue, the majority offers no explanation as to how the lower court's citation to dicta in Herrera raise the question of burden shifting to appellant. While the majority cites lack of clarity by the lower court, it certainly can be criticized for its own lack of clarity in ordering a remand. The cite to dicta in Herrera neither undermines the fact that the court correctly applied the Turner and Jackson standard, nor blunts the fact that the CCA found the Government had proven its case beyond a reasonable doubt. A remand will do little more than clarify what review the court performed under Turner and Jackson. The fact that the "presumption of innocence disappears" when there is a habeas corpus petition does not weaken, and is indeed consistent with, the proposition that there is no presumption of innocence after a conviction at the trial level. Thus, the CCA correctly applied Turner and Jackson to both its factual and legal sufficiency reviews. See 54 MJ at 941.

SULLIVAN, Senior Judge (concurring in part and dissenting in part):

I do not write on a clean slate concerning the first granted issue.  See United States v. Rockwood, 52 MJ 98, 114 (1999); United States v. Olinger, 50 MJ 365, 367 (1999)(Sullivan, J., concurring in the result); United States v. Rankins, 34 MJ 326, 331 (CMA 1992)(Sullivan, J., dissenting).  However, in this case, appellant conceded that the order to take the anthrax shot was lawful.  In addition, it was uncontroverted that he had previously taken five of six required anthrax shots without serious incident.  Under these circumstances, the judge's decision to deny admission of evidence of possible effects of an anthrax shot in general, if error, was clearly harmless beyond a reasonable doubt.  See United States v. Garcia, 44 MJ 27, 31-32 (1996)(exclusion of defense evidence which did not have value in particular case was harmless error).

The second issue granted review is more difficult.  It asks:

> WHETHER THE AIR FORCE COURT OF CRIMINAL
> APPEALS ERRED IN ITS APPLICATION OF
> ARTICLE 66(c) WHEN IT CONCLUDED THAT
> APPELLANT WAS NOT ENTITLED TO A
> PRESUMPTION OF INNOCENCE

In my view, the Court of Criminal Appeals clearly erred.  United States v. Troutt 8 USCMA 436, 439, 24 CMR 246, 249 (1957), See also United States v. Sills, 56 MJ 239, 240-41 (2002)(holding

that the Air Force Court of Criminal Appeals erred in not applying a beyond a reasonable doubt standard when exercising its factual sufficiency power under Article 66(c), Uniform Code of Military Justice (UCMJ), 10 USC § 866(c). Nevertheless, I further conclude that this error did not prejudice appellant. See Article 59(a), UCMJ, 10 USC § 859(a).

Article 66(c) UCMJ states:

> In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in the law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

This statute does not expressly provide a standard of review for a service appellate court to use in exercising its fact-finding power. See also Jackson v. Taylor, 353 U.S. 569, 575-76 (1957). However, as noted above, in United States v. Sills, 56 MJ at 241 this Court held that a service appellate court should employ the traditional criminal trial standard of "beyond a reasonable doubt" in conducting "a de novo review" of the facts. See generally Bose Corp. v. Consumers Union of United States Inc., 466 U.S. 485, 514 n.31 (1984)(defining de novo review as an

"original appraisal of all the evidence").  Our holding reflected

well-established military law.  See United States v. Boland, 1 MJ

241, 241 (1975)(per curium); United States v. McCrary, 1 USCMA 1,

3, 1 CMR 1, 3 (1951)(Board of Military Review (now Court of

Criminal Appeals) is a trier of fact which must apply a beyond a

reasonable doubt standard); See generally Homer E. Moyer,

Procedural Rights of the Military Accused: Advantages over a

Civilian Defendant, 51 Mil.L.Rev. 1, 28-29 (1971).


    Article 66(c), UCMJ, also does not expressly provide that the

Court of Criminal Appeals afford a military accused a presumption

of innocence in conducting its fact-finding.  Cf. J. Powers, Fact

Finding in the Courts of Military Review, 44 Baylor L. Rev., 457,

465-68 (1992)(suggesting that structure of Article 66(c), UCMJ,

presumes error by trial court until affirmed by Court of Military

Review).  However, a presumption of innocence is clearly

applicable to fact-finding by a court of members at a court-

martial.  Article 51(c), UCMJ, 10 USC § 851(c), states:


> Before a vote is taken on the findings,
> the military judge or the president of a
> court-martial without a military judge
> shall, in the presence of the accused and
> counsel, instruct the members of the
> court as to the elements of the offense
> and charge them-
> (1)  that the accused must be presumed to
> be innocent until his guilt is
> established by legal and competent
> evidence beyond reasonable doubt;
> (2)  that in the case being considered,
> if there is a reasonable doubt as to the

> accused, the doubt must be resolved in
> favor of the accused and he must be
> acquitted;
> (3)  that, if there is a reasonable doubt
> as to the degree of guilt, the finding
> must be in a lower degree as to which
> there is no reasonable doubt; and
> (4)  that the burden of proof to
> establish the guilt of the accused beyond
> reasonable doubt is upon the United
> States.

Moreover, as the above statute indicates, the presumption of innocence is inextricably woven within the traditional criminal law standard of proof beyond a reasonable doubt.  See generally Taylor v. Kentucky, 436 U.S. 478 (1978).  Finally, decisions from this Court and the Court of Criminal Appeals hold that the presumption of innocence is applicable to the factual review of the Court of Criminal Appeals.[1]  See United States v. Pettiford, 9 USCMA 648, 651, 26 CMR 428, 431 (1958); United States v. Troutt, 8 USCMA 436, 439, 24 CMR 246, 249 (1957); see e.g., United States v. Powell, 29 CMR, 688, 701 (N.B.R. 1959); United States v. Walker, 10 CMR 773, 784-85 (A.B.R. 1952).

My conclusion that this presumption should be applied by the Courts of Criminal Appeals is amply supported by the unanimous decision of this Court in United States v. Crider, 22 USCMA 108, 46 CMR 108 (1963).  There, this Court clearly recognized that

---

[1] Trial burdens and appellate standards of review are not necessarily unrelated, especially where a unique appellate statute like Article 66(c), Uniform Code of Military Justice (UCMJ), 10 USC § 866(c), is involved.  See Steven A. Childress & Martha S. Davis, 1 Federal Standards of Review § 6.03 at 6-21. (3rd ed. 1999).

United States v. Washington, No. 01-0658/AF

Congress had uniquely provided service appellate courts with the same fact finding powers as a trial court.

> Of greater importance is that Courts of Military Review possess far-reaching powers that are not normally attributes of appellate bodies. Article 66(c), UCMJ, 10 USC § 866(c), provides that such courts
>
> ". . . may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in the law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of the witnesses, and determine controverted questions of fact...."
>
> Factual determinations by Courts of Military Review are binding on this Court. United States v. Baldwin, 17 USCMA 72, 37 CMR 336 (1967); United States v. Remele, 13 USCMA 617, 33 CMR 149 (1963); United States v. Moreno, 5 USCMA 500, 18 CMR 124 (1955).
>
> Essentially, the Court of Military Review provides a de novo trial on the record at appellate level, with full authority to disbelieve the witnesses, determine issues of fact, approve or disapprove findings of guilty, and, within the limits set by the sentence approved below, to judge the appropriateness of the accused's punishment. We believe such a court's exercise of its fact-finding powers in determining the degree of guilt to be found on the record is more apposite to the action of a trial court than to that of an appellate body.

Crider, 22 USCMA at 110-11, 46 CMR at 110-11 (emphasis added).

See also United States v. Sikorski, 21 USCMA 345, 348, 45 CMR 119, 122 (1972); McCrary, 1 USCMA at 4, 1 CMR at 4. Fifty years

5

of military precedent and practice upholding this broad appellate fact-finding power should not be lightly discarded.[2]  See generally United States v. Tualla, 52 MJ 228, 231 (2000)(upholding the doctrine of stare decisis); see generally, Lester B. Orfield, Criminal Appeals in America 79-91 (1939)("[p]erhaps the greatest step in the development of the scope of review in modern times has been that of allowing the [appellate] court... to review the facts").

In any event, a new argument against applying the presumption of innocence at the Court of Criminal Appeals was accepted by the service appellate court in this case.  It cited the Supreme Court decision in Herrera v. Collins, 506 U.S. 390, 399 (1993).  There, the Supreme Court said,

> [o]nce a defendant has been afforded a fair trial and convicted of the offense for which  he was charged, the presumption of innocence disappears.  Cf. Ross v. Moffit, 417 U.S. 600, 610 (1974) ("The purpose of the trial stage from the state's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt").  Here it is not disputed that the State met its burden of proving at trial that petitioner was guilty of the capital murder of Officer Carrisalez beyond a reasonable doubt.  Thus, in the eyes of

---

[2] In my view the majority opinion reaffirms the prior decision of this court in United States v. Troutt, 8 USCMA 436, 24 CMR 246 (1957) and effectively requires application of the presumption of innocence by the Court of Criminal Appeals during its factual review of the evidence under Article 66, UCMJ.  It does so to the extent that it implicitly recognizes that for purposes of this review the burden of proof or persuasion beyond a reasonable doubt is on the government and it cannot be shifted to the military accused.  In my view this is not a "level playing field."  See generally Taylor v. Kentucky, 431 U.S. 478 (1978).

> the law, petitioner does not come before the Court as one who is "innocent", but, on the contrary, as one who has been convicted by due process of law of two brutal murders.

Id. (emphasis added).

The Court of Criminal Appeals below likewise concluded that the presumption of innocence disappears for a service member who comes before the Court of Criminal Appeals after being found guilty by a court-martial. United States v. Washington, 54 MJ 936, 941 (A.F. Ct. Crim. App. 2001). I disagree.

Herrera, supra, concerns a Supreme Court review of a federal habeas corpus petition of a state court criminal conviction. That petitioner had already unsuccessfully challenged his conviction on direct review, in collateral state proceedings in the state court, and in a prior federal habeas petition. The Supreme Court affirmed the Circuit Court of Appeals denial of this petition on the basis that, absent a constitutional violation, a claim of actual innocence based on post-trial affidavits is not cognizable on such a habeas petition. Appellant, unlike Herrera, however, is on direct appeal of his court-martial conviction under Article 66, UCMJ.

More importantly, Herrera, supra, does not hold or reasonably imply that a presumption of innocence can never be afforded an appellant on the appeal of a criminal case. The

7

existence of such presumption on appeal is not a constitutional or common law question, but a question of statutory law.  See generally Martinez v. Court of Appeals of California, 528 U.S. 152, 160 (2000) (quoting Abney v. United States, 431 U.S. 651, 656 (1977)("the right of appeal, as we presently know it in criminal cases, is purely a creature of statute")).  The Supreme Court's pronouncement in Herrera on the status of a criminal defendant before an appellate court was no more than a general statement of the law.  Indeed, the federal civilian criminal justice system, and most state jurisdictions, do not provide for appellate review of findings of guilty of a trial court for factual sufficiency.  However, a small minority of jurisdictions, like the military justice system, do provide for a factual review by statute, and thus, present a different appellate scenario not addressed in Herrera.  See People of Virgin Islands v. Price, 181 F.2d 394 (3rd Cir. 1950); People v. Bleakley, 508 N.E. 2d. 672 (N.Y. 1987); Commonwealth v. Cadwell, 372 N.E.2d. 246 (Mass. 1978); Clewis v. State, 922 S.W.2d. 126 (Tex. Crim. App. 1996); see generally Lester B. Orfield, Appellate Review of the Facts in Criminal Cases, 12 F.R.D. 311, 315-16 (1952)(noting six states had statutes permitting review of facts in criminal cases in 1930).

Of course, even in this appellate scenario, most of the jurisdictions which provide for some appellate factual review of findings of guilty, employ a weight of the evidence standard of

review which might not require application of the presumption of innocence.  See Bleakley, 508 N.E.2d at 675  But see Price, supra.  Nevertheless, there is a long established tradition in military law providing for de novo post-trial review of court-martial verdicts by reviewing authorities and confirming authorities using a beyond a reasonable doubt standard of review.  See Runkle v. United States, 122 U.S. 543, 557 (1887); William F. Fratcher Appellate Review in American Military Law, 14 Mo. L. Rev. 15, 25, 30-40, 48, 51-52, 60, 66 (1949); William M. Connor, Reviewing Authority Action in Court-Martial Proceedings, 12 Va. L. Rev. 43, 54-60 (1926); cf. William M. Connor, Legal Aspects of the Determinative Review of General Court-Martial Cases and Article of War 50 1/2, 31 Va. L. Rev. 119 (1944).  Moreover, the overwhelming demand for drastic reform in military justice after World War II strongly suggests that Congress intended this same type of appellate review of the facts (including a presumption of innocence) be conducted by these newly constructed service appellate courts pursuant to the UCMJ.  See generally 1 Jonathan Lurie, Arming Military Justice, 130-50 (1992); J.Powers, Fact Finding in the Courts of Military Review, supra; cf. Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston, 515 U.S. 557, 567-68 (1995)(recognizing Supreme Court's authority for independent appellate review of constitutional facts without deference to trial courts).  See generally Adam Hoffman, Note, Corralling

United States v. Washington, No. 01-0658/AF

Constitutional Fact: De Novo Fact Review in the Federal Appellate Courts, 50 Duke L.J. 1427, 1430-31 (2001).

A final question remains whether certain language in Article 66(c), UCMJ, itself precludes or is inconsistent with a presumption of innocence being applied by the Courts of Criminal Appeals in their review of the verdicts of courts-martial. Article 66(c), UCMJ, states in pertinent part

> In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted question of fact, <u>recognizing that the trial court saw and heard the witnesses</u>.

(Emphasis added.)

An argument is made that the clean slate afforded an accused at the beginning of a court-martial, see Article 51, UCMJ, can not be maintained on appeal, once that accused is convicted <u>and</u> the Court of Criminal Appeals is required to give that verdict deference. <u>See</u> <u>Washington</u>, 54 MJ at 941. Again, I am not persuaded that this Court should change course. <u>See also</u> Hoffman, Note, <u>supra</u>, at 1441-45.

I would first note that the recognition language noted above does not stand alone in Article 66(c), UCMJ. This statute broadly says that the Courts of Criminal Appeals "may affirm only such findings of guilty. . . as it finds correct... in fact." It

10

additionally delineates specific fact-finding powers for that appellate court which normally are associated only with a trial court where the presumption of innocence usually operates. Second, our Court has not attached undue significance to this language in this statute; rather we generally have considered it a simple admonition or caution. See United States v. Doctor, 7 USCMA 126, 137, 21 CMR 252, 263 (1956); United States v. Hendon, 7 USCMA 429, 432, 22 CMR 219, 222 (1956)("subject only to the limitations that they bear in mind that the trial forum saw and heard the witnesses . . . ."). Third, this Court's construction of this language is justified in that the statutory predecessor of Article 66(c), UCMJ, Article of War 50(g), did not contain this language, and no explanation of its meaning or purpose is provided in the legislative history of the UCMJ.[3] Finally, as noted above, the Courts of Criminal Appeals and their predecessors (the Boards of Military Review and the Courts of

---

[3] See Articles of War, as amended by the act of June 24, 1948, reprinted in Manual for Courts-Martial, United States Army 1949. The words "recognizing that the trial court saw and heard the witnesses" are not unique to Article 66(c), UCMJ. Since 1938, Federal Rule of Civil Procedure 52 has contained similar language. See 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2571 at 481 (1997); G.K.T., Jr., Note, Rule 52(a): Appellate Review of Findings of Fact Based on Documentary or Undisputed Evidence, 49 Va. Rev. 506, 510-16 (1963). That is a civil law rule, however, and it additionally provides for a clearly erroneous standard of review placing the burden of persuasion on the appellant. Id. at 2585-87. Similar language was also used before 1938 with respect to appeals in equity to describe a judicially created limit on the traditionally broad scope of appeal in equity which extended even to the facts of a case. See Lester B. Orfield, Appellate Procedure in Equity Cases: A Guide For Appeals at Law, 90 U. Pa. L. Rev. 563, 580, 593 (1942); Henry L. McClintock, Handbook of the Principle of Equity 40 (2nd ed. 1948); cf. William M. Connor, Legal Aspects of the Determinative Review of General Court-Martial Cases and Articles of War 50½, 31 Va. L. Rev. 119, 152-56 (1944). United States v. Calder, 27 BR 365, 382-83 (A.B.R. 1944). Neither situation is particularly analogous to the broad de novo review of the facts provided by Congress after World War II as an innovative response to widely demanded reform of our military justice system. See 1 Jonathan Lurie, Arming Military Justice 130-50 (1992).

Military Review) have historically conducted their Article 66 <u>de novo</u> review of the facts using a presumption of innocence.  <u>See</u> <u>Powell</u>, <u>supra</u>; <u>Walker</u>, <u>supra</u>.

Although I conclude that the Court of Criminal Appeals erred in rejecting a presumption of innocence, I still must vote to affirm appellant's conviction. The Court of Criminal Appeals alternatively decided this case on the basis of our precedent, not <u>Herrera</u>, <u>supra</u>, which required it to find proof of guilt beyond a reasonable doubt in its review of the evidence under Article 66(c), UCMJ.  54 MJ at 941 (citing <u>United States v. Turner</u>, 25 MJ 324, 325 (CMA 1987)).  While the presumption of innocence and the traditional criminal law standard of proof beyond a reasonable doubt are not synonymous, they overlap to the extent that they both require the prosecution to prove beyond a reasonable doubt each and every element of the offense. <u>See</u> 9 John H. Wigmore, <u>Evidence in Trials at Common Law</u> § 2511 (Chadbourne rev. 1981).  Admittedly, the presumption of innocence also protects against conviction of the accused based on the fact of his arrest, his being charged with a crime, or his presence in the courtroom as a defendant.  However, the Court of Criminal Appeals, composed of professionally trained and qualified judges, need no reminder of this law. Accordingly, the lower appellate court's disavowal of the presumption of innocence was harmless error in this case.  See

United States v. Washington, No. 01-0658/AF

United States v. Velez-Vasquez, 116 F.3d 58, 62 (2nd Cir. 1997);

see also Kentucky v. Whorton, 441 U.S. 786 (1979).[4]

---

[4] Concerning the third granted issue in this case, I agree with its resolution by the majority.