# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, KRAUSS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 DANEWOOD L. KIRKPATRICK**
**United States Army, Appellant**

ARMY 20100716

Headquarters, 10th Support Group and U.S. Army, Okinawa
T. Mark Kulish, Military Judge
Lieutenant Colonel Barry J. Stephens, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Kristin McGrory, JA (on brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Catherine L. Brantley, JA; Captain Jessica J. Morales, JA (on brief).

31 January 2013

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Judge:

A panel of officer and enlisted members, sitting as a general court-martial, convicted appellant, contrary to his pleas, of one specification of willfully disobeying a superior commissioned officer, four specifications of violating a lawful order, one specification of stalking, and one specification of housebreaking, in violation of Articles 90, 92, 120a, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 892, 920a, 930 (2006) [hereinafter UCMJ].[*] The panel sentenced

---

[*] The panel acquitted appellant of one specification of rape and one specification of aggravated sexual contact in violation of Article 120, UCMJ. The military judge acquitted appellant of one specification of obstructing justice in violation of Article 134, UCMJ. In addition, a separate specification of obstructing justice was dismissed.

appellant to a bad-conduct discharge, confinement for 180 days, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited appellant with 179 days of pretrial confinement credit against the sentence to confinement.

The case is before the court for review under Article 66, UCMJ. Appellant asserts that the evidence is factually and legally insufficient to find him guilty of Charge III and its Specification (stalking) and Specification 2 of Charge I (violating a lawful order). We agree with appellant and will order relief in our decretal paragraph. Appellant's remaining assignments of error, along with the matters he personally raises pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are without merit.

## STALKING

From April 2009 through March 2010, Private First Class (PFC) FC and appellant had an off-and-on sexual and romantic relationship. On 23 February 2010, appellant visited PFC FC. After an argument between the two, PFC FC alleged that appellant brutally raped her. However, the panel acquitted appellant of the rape and aggravated sexual contact that allegedly occurred on this date.

On 7 March 2010, appellant entered PFC FC's home without her consent. Private First Class FC initially "froze" when she saw appellant enter her kitchen, but she ultimately continued cleaning her house and packing for a trip to the field. While PFC FC testified that she was scared of appellant at certain points that night, she ultimately insisted that he spend the night in her bed because she became afraid that he would harm himself. Private First Class FC then got up early the next morning and left appellant alone with her children while she went to the field.

We find the evidence of stalking as alleged in Charge III and its Specification to be factually insufficient. UCMJ art. 66(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). First, the evidence fails to establish that appellant "wrongfully engaged in a course of conduct directed at a specific person that would cause a reasonable person to fear death or bodily harm to himself or herself or a member of his or her immediate family." *See Manual for Courts-Martial*, *United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶45a.b.(1). "Course of conduct" means "a repeated maintenance of visual or physical proximity to a specific person; or a repeated conveyance of verbal threat, written threats, or threats implied by conduct, or a combination of such threats, directed at or towards a specific person." *MCM*, pt. IV, ¶45a.a.(b)(1). In this context, "repeated" means "two or more occasions of such conduct." *MCM*, pt. IV, ¶45a.a.(b)(2).

Here, appellant visited PFC FC in her home on 23 February 2010. PFC FC also invited appellant to spend the night with her on 7 March 2010, and she left him

the next morning with her children. The only other contact appellant had with PFC FC during the charged time period was a series of text messages that he sent her on 24 February 2010. Private First Class FC did not respond to any of appellant's text messages and none of the text messages constitute threats under Article 120a, UCMJ.

Second, the evidence fails to establish that appellant "had knowledge, or should have had knowledge, that the specific person would be placed in reasonable fear of death or bodily harm to himself or herself or a member of his or her immediate family." *See MCM*, pt. IV, ¶45a.b.(2).

The tumultuous nature of the off-and-on relationship between appellant and PFC FC casts doubt on the notion that appellant knew, or should have known, that his presence would place PFC FC in fear of death or bodily harm. Moreover, PFC FC invited appellant to spend the night on 7 March 2010, and further allowed appellant to care for her children by himself afterwards. In light of the above, we maintain reasonable doubt that appellant possessed the requisite actual or imputed knowledge that his actions would put PFC FC in fear of death or bodily harm.

Third, the evidence fails to establish that appellant's "acts induced reasonable fear in the specific person of death or bodily harm to himself or herself or to a member of his or her immediate family." *See MCM*, pt. IV, ¶45a.b.(3).

In this case, PFC FC adamantly insisted on appellant spending the night with her in her bed on 7 March 2010. Further, she left appellant to care for her children the next morning when she left for the field. Private First Class FC also did not feel the need to alert police authorities or her chain of command upon appellant's initial entrance into her residence on 7 March 2010. In light of the above, we maintain reasonable doubt that appellant's actions during the charged time period induced reasonable fear in PFC FC.

## VIOLATING A LAWFUL ORDER

In Specification 2 of Charge I, the government charged appellant with violating a Military Protective Order (MPO) issued by his commander, Captain (CPT) BA. Specifically, Specification 2 of Charge I alleged that appellant wrongfully contacted PFC FC through the use of a playstation game-system. The MPO, in pertinent part, prohibited the following:

> [Appellant] is restrained from initiating any contact or
> communication with [PFC FC] either directly or through a
> third party. For purposes of this order, the term
> 'communication' includes, but is not limited to,
> communication in person, or through a third party, via

> face-to-face contact, telephone, or in writing by letter,
> data fax, or electronic mail. . . . 'Communication' also
> includes, instant messenger (IM), texting with cell
> phone[.]

At trial, PFC FC testified that appellant contacted her children through the use of a playstation game-system. Appellant apparently asked PFC FC's children whether a fellow soldier was present in their house and asked them how PFC FC was doing. However, at no time did appellant request to speak with PFC FC nor did appellant ask the children to communicate to PFC FC on his behalf. In fact, PFC FC's children never told her that they had been communicating with appellant. Instead, PFC FC saw the messages on the playstation "a few days later."

The MPO at issue did not prohibit appellant from communicating with PFC FC's children, and appellant did not attempt to communicate with PFC FC through her children. Since appellant did not communicate either directly or indirectly with PFC FC through the use of a playstation game-system, appellant did not fail to obey the order given by CPT BA. Consequently, we find the evidence as to Specification 2 of Charge I to be legally and factually insufficient. UCMJ art. 66(c); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Washington*, 57 M.J. at 399; *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

## EFFECT ON SENTENCE

In light of the above, we also reverse the sentence in this case. A panel of officer and enlisted members sentenced appellant to a bad-conduct discharge, confinement for 180 days, and reduction to the grade of E-1 when he faced a maximum punishment of a dishonorable discharge, fifteen years' confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The stalking offense was the most significant aggravating offense remaining in appellant's case. Such a significant change now in the aggravating circumstances of a case adjudged by a panel, where the trial counsel emphasized the stalking offense now reversed as one of the bases for imposition of a severe punishment of ten years' confinement, precludes a confident reassessment of the sentence. Therefore, we will direct a rehearing on sentence for the offenses remaining.

## CONCLUSION

On consideration of the entire record, the parties' pleadings, and the matters appellant personally raised pursuant *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty of Charge III and its Specification and Specification 2 of Charge I are set aside and those specifications are dismissed with prejudice. The remaining findings of guilty are affirmed. The sentence is set aside.

A rehearing on the sentence may be ordered by the same or a different convening authority.

Senior Judge YOB and Judge KRAUSS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court