BAKER, Judge
(concurring in the result):
I agree with the majority’s conclusion that the Air Force Court of Criminal Appeals did not abuse its discretion in reassessing Appellant’s sentence. Therefore, I also agree with the result. However, I believe we are nearing a crossroads on sentence reassessment under United States v. Sales, 22 M.J. 305 (C.M.A.1986), if we have not already reached it. In my view, we should either reassess the continued viability of the Sales presumption or offer further guidance on its application. This case offers an opportunity to do so.
The law invokes and accepts a number of presumptions. For example, “military judges are presumed to know the law and to follow it, absent clear evidence to the con-trary____ [Ajppellate judges of the Courts of Criminal Appeals are deserving of no less a presumption.” United States v. Mason, 45 M.J. 483, 484 (C.A.A.F.1997) (citations omitted). In addition, “in the absence of evidence to the contrary, court members are presumed to have followed the military judge’s instructions.” United States v. Pollard, 38 M.J. 41, 52 (C.M.A.1993) (quotation marks omitted). And, of course, the law presumes the innocence of an accused, notwithstanding anything that may be known before trial, until the government proves each element of the crime beyond a reasonable doubt. “In the courtroom, the presumption of innocence means not only that the Government bears the burden of proving every element of crime beyond a reasonable doubt, but that the trier of fact—panel, jury, or judge—approaches the case without negative predisposition drawn from the accused’s presence in the courtroom.” United States v. Washington, 57 M.J. 394, 402 (C.A.A.F.2002) (Baker, J., concurring). Indeed, law would operate with great difficulty were it not for the use of presumptions. Presumptions are pragmatic creations, “rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.” Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).
In Sales and its antecedents, we adopted a further presumption of law that a Court of Criminal Appeal could, in certain contexts, “determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity____” Sales, 22 M.J. at 308. Of course, as Appellant points out, there is a certain leap of logical faith involved in such an assumption. Absent clairvoyance, we cannot actually know how a military judge or a panel of members would have sentenced an appellant following a change in factual circumstances. This is especially true within a sentencing construct not based on guidelines or bands, but on discretionary sentence máximums and individualized adjudication. However, this Court nonetheless concluded in Sales that the lower court may reassess an appropriate sentence for an offense so long as the reassessed sentence “is no greater than that which would have been imposed if the prejudicial error had not been committed.” Id. Our holding in Sales was based on an understanding that given the substantial experience of the lower court, it could act in accordance with the above-noted presumption and accurately reassess an appropriate sentence. See United States v. Hawes, 51 M.J. 258, 260 (C.A.A.F.1999).
Heretofore, this Court’s review for abuse of discretion has been case specific, conveying something of a “knowing it when we see it” feel. This approach reflects reasonable and principled views regarding what Sales means and how it should apply. However, there are important public policy and legal policy reasons to enjoin a more predictable framework for reviewing sentence reassessments. Among other things, there is considerable societal cost in time, money, and *43 is emotional investment when a sentence reassessed by a Court of Criminal Appeals and then overturned by this Court—sending it back years later for a sentence rehearing. Finality is lost. Sentencing witnesses must be recalled to testify about events long since past. Military members must also be pulled from the line of duty. As a result, I believe we should identify, in a nonexhaustive fashion, factors we will use to review reassessments of the Courts of Criminal Appeals.
In other words, we should identify those factors that buttress the presumption that appellate judges can indeed reassess a sentence for the offense involved. Otherwise, we should consider whether to abandon the presumption altogether. I believe the following nonexhaustive list of factors is relevant:
(1) whether there are changes in the penalty landscape, including instances where charges with significant exposure or aggravating circumstances are taken off the table. United States v. Buber, 62 M.J 476, 479 (C.A.A.F.2006);
(2) whether an appellant chose sentencing by members, instead of by military judge alone. As a matter of logic, judges of the Courts of Criminal Appeals are more likely to be certain of what a military judge alone would have done than what a panel of members would have done. Moreover, where an appellant selected sentencing by members, there may be due process considerations if sentence reassessment is conducted by appellate judges;
(3) the nature of the remaining offenses. Are the remaining offenses of the sort that a Court of Criminal Appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial by the military judges or members? Do the remaining offenses fit within a particular normative range based on repetition and scale within a construct of individualized sentencing based on individual offenses? Use or possession of certain drugs and unauthorized absence offenses might fit this category;
(4) whether the Court of Criminal Appeals identified and evaluated the factors that informed its reassessment decision on the record. We should afford greater deference to a clear and logical reassessment on the record.
Although there will always remain room for debate about the application of law to fact when dealing with a presumption rather than the reality of knowing what the factfinder would have actually done, if this Court cannot identify a list of factors that underscore this presumption, I wonder if we shouldn’t conclude that Sales is unworkable as a uniform, predictable, and fair mechanism to reassess sentences.
At this time, my view is that Sales is a viable and valuable mechanism. It promotes judicial economy, economy of military force, and the government’s and the appellants’ interests in finality. And it is fair in situations where Court of Criminal Appeals judges can indeed reliably determine what the factfinder would have done.
Applying these factors to the circumstances of this case, I would affirm. First, the original sentencing action was before a military judge alone, increasing the probability that experienced judges sitting on the Court of Criminal Appeals could determine what a military judge would have done on sentencing, although it is noteworthy that one appellate judge dissented.
Second, the Court of Criminal Appeals identified the correct framework for addressing sentence reassessment and applied it to the facts of this case. However, the Court of Criminal Appeals did not develop its analysis with respect to the possibility that Appellant might have received a bad-conduct discharge rather than a dishonorable discharge at trial, so its determination on this point merits less deference.
Third, the relative change in sentencing landscape was significant. Appellant’s original exposure was to forty-five years. Following the dismissal of Specifications 1 and 2, Appellant was exposed to fifteen years of confinement. This fact weighs most heavily in the direction of a rehearing. On the other hand, the prosecution had asked for four years of confinement at Appellant’s original trial. In addition, the dismissed specifications were for offenses regularly reviewed by the Court of Criminal Appeals and therefore *44 the experienced judges on the court would have a well-founded appreciation for the range of sentence imposed by military judges. Most importantly, the remaining offense considered by the Court of Criminal Appeals on reassessment was a serious offense, at least as serious as the dismissed offenses, with significant aggravating factors.
In summary, while the change in sentencing landscape weighs in favor of a sentence rehearing, the remaining factors place this case within the zone of Sales reassessment. The original sentence was determined by a military judge, the Court of Criminal Appeals applied the correct Sales framework, and the dismissed charges were of a nature generally reviewed by Court of Criminal Appeals. Finally, the reassessed offense was serious, bore aggravating circumstances, and was also of a nature that a Court of Criminal Appeals would have experience with and practical knowledge of what military judges normally award.
On reassessment, Appellant stood convicted of trying to entice multiple young children into engaging in sexual relations under the guise of an Internet invitation to participate in a pagan ritual. Among other things, Appellant’s advertisement cautioned that participants must be ages thirteen to twenty years old, must not have any sexually transmitted diseases, and “must go through no matter what intales [sic].” For this offense, the Court of Criminal Appeals sentenced Appellant to thirty-three months and a dishonorable discharge, in lieu of the original sentence of forty-five months, and a dishonorable discharge. On such facts, it is within the reasonable discretion of the Court of Criminal Appeals to conclude that a military judge sitting alone would have awarded a dishonorable discharge as opposed to a bad-conduct discharge to a servicemember convicted of enticing underage children to have sex through an Internet advertisement.