# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201400356

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## JEFFERY D. SAGER
Aviation Ordnanceman Airman (E-3), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges: Commander John A. Maksym, JAGC, USN.
Convening Authority: Commander, U.S. Naval Forces Japan,
Yokosuka, Japan.
Staff Judge Advocate's Recommendations: Commander Timothy D.
Stone, JAGC, USN.
For Appellant: Lieutenant Doug Ottenwess, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC,
USN; Lieutenant James M. Belforti, JAGC, USN.

————————————

Decided 31 January 2018

————————————

Before HUTCHISON, FULTON, and SAYEGH, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

FULTON, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of abusive sexual contact, in violation of Article 120, Uniform

Code of Military Justice (UCMJ).[1] The members acquitted the appellant of a second specification also alleging abusive sexual contact against the same complaining witness. The convening authority approved the adjudged sentence of 24 months' confinement and a bad-conduct discharge.

This case is before us for a second time. The Court of Appeals for the Armed Forces (CAAF) reversed our earlier opinion affirming the appellant's conviction for abusive sexual contact.[2] At the heart of the appellate litigation in this case is a question over the interpretation of Article 120(b)(2), UCMJ, which proscribes sexual contact with people the accused knows, or reasonably should know, are incapable of consenting to the contact because they are "asleep, unconscious, or otherwise unaware" that the contact is occurring.[3] The unusual posture of this case after trial required us to decide whether the terms *asleep*, *unconscious*, and *otherwise unaware* represented distinct theories of criminal liability. In our first review of this case, we held that they do not. Rather, we held that the reasons for a victim's lack of awareness, be it sleep, unconsciousness, or something else, were only relevant to whether the accused should have known that the victim was unaware of the contact.[4]

The CAAF held that our interpretation was incorrect. Reversing this court, the CAAF held that "asleep, unconscious, or otherwise unaware" represents three separate theories of liability.[5] The CAAF also held that the term *otherwise unaware* means unaware in a manner different from both sleep and unconsciousness.[6] The CAAF returned the case to us for a new factual sufficiency review, this time applying the correct interpretation of Article 120(b)(2).[7] In conducting that review, the CAAF directed us to consider whether the Supreme Court's decision in *Green v. United States*, which held that a jury's silence as to a charge terminates a defendant's jeopardy as to that charge, applies to this case.[8]

---

[1] 10 U.S.C. § 920 (2012).

[2] *United States v. Sager*, No. 201400356, 2015 CCA LEXIS 571 (N-M. Ct. Crim. App. 29 Dec 2015), *rev'd and remanded*, *United States v. Sager*, 76 M.J. 158 (C.A.A.F. 2017).

[3] 10 U.S.C. § 920(b)(2) (2012).

[4] *Sager*, 2015 CCA LEXIS at *9.

[5] *Sager*, 76 M.J. at 162.

[6] *Id.*

[7] *Id.*

[8] 355 U.S. 184 (1957).

We have completed our review and find that the appellant's conviction for abusive sexual contact is insufficiently supported by the evidence. We therefore set it aside. Applying *Green*, we dismiss the charge and its specification.

## I. BACKGROUND

The appellant and Airman TK were shipmates on a Navy ship homeported in Yokosuka, Japan. On the evening of the offenses, Airman TK visited several bars near the naval base and met the appellant, whom he understood to be his "liberty buddy," at one of the bars. Airman TK, the appellant, and several other Sailors spent the rest of the evening together. Around 2300, the group left the bar and walked to Petty Officer DS's apartment, where they spent the night.

By this time, Airman TK was "[v]ery drunk."[9] He was stumbling, slurring his words, and he vomited into a bucket the appellant brought him. According to Airman TK, after vomiting, he recalls "passing out" on a futon in the living room.[10] He awoke to the appellant manually stimulating his penis. Airman TK felt the appellant's hand on his penis, but was unable to talk or move because he was too drunk. After about five to ten minutes of manual stimulation his penis was erect. Although he could not move, Airman TK mentally tried without success to lose his erection. After manually stimulating Airman TK, the appellant performed oral sex on him until he ejaculated.

Based on these facts, the government charged the appellant with two specifications of sexual assault. For fellating Airman TK, the government charged the appellant with committing a sexual act on Airman TK when the appellant knew or reasonably should have known that Airman TK was incapable of consenting due to intoxication. The members acquitted the appellant of this offense. For manually stimulating Airman TK's penis, the government charged the appellant with committing a sexual contact on Airman TK when the appellant knew or reasonably should have known that Airman TK was asleep, unconscious, or otherwise unaware that the sexual contact was occurring. The members convicted the appellant of this offense.

The military judge took an unusual approach to findings in this case. Instead of instructing the members to vote on the appellant's guilt in the specification, the military judge directed the members to hold separate votes for different theories of liability under Article 120(b)(1):

---

[9] Record at 522.

[10] *Id.* at 527.

. . . [Y]ou have to circle under the charge and specification the theory of the government you adopt if you convict. You'll notice that . . . [i]t's he knew or should have known . . . . That means you're going to have to vote on . . . both theories . . . . The first vote is going to be, okay, is he guilty or not guilty of the charge under the . . . specification under the theory of "knew" he knew. Is he guilty or not guilty under the theory of "should have known" because the government has both theories . . . . But you have to circle the one that's applicable, okay.[11]

The findings worksheet presented the different theories of liability as choices to be circled if the members convicted on that theory. Although the military judge did not instruct the members that they had to circle whether they found that Airman TK was asleep, unconscious or otherwise unaware at the time, the members circled not only that they found the appellant "reasonably should have known," but also that Airman TK was "otherwise unaware" that a sexual act was occurring.[12] This is the finding the CAAF has directed us to review for factual sufficiency.

## II. DISCUSSION

### A. Factual sufficiency

We review questions of factual sufficiency de novo.[13] The test for factual sufficiency is whether, after weighing all the evidence in the record of trial, we are convinced of the appellant's guilt beyond a reasonable doubt, allowing for the fact that we did not personally observe the witnesses.[14]

To affirm this conviction, we must be convinced beyond a reasonable doubt that the appellant committed a sexual contact with Airman TK when he reasonably should have known that Airman TK was "otherwise unaware" that the sexual contact was occurring.[15] Because there is insufficient evidence

---

[11] *Id.* at 1198.

[12] Appellate Exhibit (AE) 131. The findings worksheet presented to the members read as follows:

> (b) Guilty **in that AN Sager committed a sexual contact upn [Airman TK] when AN Sager (knew) (or) (reasonably should have known) that [AirmanTK] was (asleep), (unconscious), (or) (otherwise unaware) that the sexual act was occurring.**

[13] *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

[14] *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

[15] AE 131.

that the appellant was otherwise unaware that the sexual contact was occurring, we must set aside the conviction.

In its opinion reversing this court, the CAAF provided clarification of the term *otherwise unaware*. The CAAF determined that in the context of Article 120(d), UCMJ, *otherwise unaware* means "unaware in a manner different from asleep and different from unconsciousness."[16] Airman TK testified that he awoke to the appellant touching his penis. The government argued to the members that Airman TK was sleeping before he became aware that the appellant was touching his penis. Assuming that Airman TK was unaware that the appellant was touching his penis before he woke up, there is little in the record to suggest that the reason for his lack of awareness was "in a manner different from asleep and different from unconsciousness."[17] The evidence suggests he was unaware *because* he was asleep. And there is no evidence that he was unaware of the sexual contact after he woke up. In short, the evidence does not convince us beyond a reasonable doubt that Airman TK was unaware of the sexual contact "in a manner different from asleep and different from unconsciousness" and we must disapprove this finding.[18]

## B. Application of *Green v. United States*

In addition to conducting a new Article 66, UCMJ, review, the CAAF directed us to consider whether the 1957 Supreme Court case *Green v. United States*[19] is applicable to this case. In *Green*, a defendant was tried for arson and first-degree murder.[20] "[T]he trial judge instructed the jury that it could find Green guilty of arson under the first count and of either (1) first degree murder or (2) second degree murder under the second count."[21] The jury convicted Green of arson and second degree murder and returned no finding as to first-degree murder.[22] After his conviction was reversed on appeal, Green was retried for first-degree murder under the original indictment.[23]

---

[16] *Sager*, 76 M.J. at 162.

[17] *Id.*

[18] *Id.*

[19] 355 U.S. 184 (1957).

[20] *Id.* at 185.

[21] *Id.*

[22] *Id.* at 186.

[23] *Id.*

The Supreme Court held that retrying Green for first-degree murder violated the constitutional prohibition against double jeopardy.[24] The Court reasoned that the jury had "full opportunity" to return a verdict and declined to convict. When the jury declined to convict Green, Green's jeopardy came to an end, and he could not be retried.

As was the case in *Green*, here the members had an opportunity to convict the appellant on other language in the specification. They had the opportunity to convict the appellant of actually knowing Airman TK was unaware of the sexual contact. They also had the opportunity to convict the appellant of committing a sexual contact with Airman TK while he was asleep or unconscious. The members declined to convict the appellant of this language. We find that the appellant's jeopardy with respect to this language came to an end when the members declined to convict him of it. We therefore dismiss this specification.

### III. CONCLUSION

The findings and sentence are set aside. The specification and charge of which the appellant was convicted are dismissed.

Senior Judge HUTCHISON and Judge SAYEGH concur.

For the Court

R.H. TROIDL
Clerk of Court

---

[24] *Id.* at 198.