# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL, BROOKHART, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JOSHUA E. TERRY**
**United States Army, Appellant**

ARMY 20180355

Headquarters, 8th Theater Sustainment Command
Kenneth W. Shahan, Military Judge
Lieutenant Colonel Ryan B. Dowdy, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Tiffany D. Pond, JA; Major Angela D. Swilley, JA; Captain Rachele A. Adkins, JA (on brief).

For Appellee:  Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain John D. Martorana, JA (on brief).

30 May 2020

--------------------------------
SUMMARY DISPOSITION
--------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

KRIMBILL, Chief Judge:

On appeal before this court, appellant raises two assignments of error.[1]  First, appellant alleges that his sexual assault conviction is factually insufficient.  Second,

---

[1] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of willfully disobeying a superior commissioned officer, one specification of sexual assault, and four specifications of assault consummated by a battery, in violation of Articles 90, 120, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 890, 920, and 928 [UCMJ].  The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for thirty months, and reduction to the grade of E-1.

appellant alleges he is entitled to relief because of the dilatory post-trial processing of his case.[2]  Appellant's factually sufficiency assignment of error merits brief discussion, but neither assignment of error merits relief.

## BACKGROUND

On 8 July 2017, appellant was assigned to Fort Shafter, Hawaii, and hosted a party at his house, which some of appellant's neighbors and co-workers attended. Specialist (SPC) RS and SPC HH were both assigned to the same company as appellant, and both attended appellant's party that evening.  When SPC HH arrived, she asked appellant if she could spend the night there because she planned to consume alcohol, but did not want to risk driving while intoxicated.  Appellant agreed and told SPC HH she could sleep on the couch downstairs because SPC RS, who also planned to spend the night at appellant's house, was going to sleep in the spare bedroom upstairs.  Appellant's wife, Sergeant (SGT) JT, and their children also spent the night in the house.  On the night of appellant's party, SPC HH was involved in a serious relationship, and her "significant other" lived near Joint Base Lewis-McChord, Washington.

After the partygoers departed appellant's house, SPC RS went to the upstairs spare bedroom to sleep, and SPC HH laid down on the downstairs couch to do the same.  At some point, appellant approached SPC HH on the couch, removed the blanket she used to cover up, and encouraged her to get up and continue drinking with him.  Specialist HH testified she was surprised when appellant removed her blanket, but agreed to have another drink and went with appellant into the kitchen where they continued consuming alcohol.  While they were drinking, SPC HH sent a text message to SPC RS that read, "Some ulterior motives, come downstairs."  After receiving the text message, SPC RS went downstairs to the kitchen, talked to appellant and SPC HH for a while, and ultimately tried to fall asleep on a chair in the living room.

Eventually, appellant and SPC HH went upstairs to the guest bedroom. Specialist HH testified that she did not remember going to the bedroom.  According to SPC HH, her first memory after drinking in the kitchen was lying on her back on the bed while appellant penetrated her vagina with his penis.  Upon realizing what was happening, SPC HH began "sobbing" and placed her hand over her mouth.

---

[2] We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they are without merit.

2

At this point, appellant asked SPC HH, "Are you crying?" Appellant then asked, "You want this, right?" Specialist HH responded "no." Appellant asked again, "You want this, right?" Specialist HH again responded "no." After the second exchange, appellant eventually stopped penetrating SPC HH, but not "immediately."

After appellant stopped, SPC HH went downstairs to wake up SPC RS and was "visibly upset." Specialist RS and SPC HH then left appellant's house and drove to SPC RS's house, where SPC RS's wife attempted to comfort SPC HH. Specialist HH described herself as "hysterical" and "sobbing pretty uncontrollably" during the drive to SPC RS's house.

Before physical training on the morning of 10 July 2017, appellant confronted SPC HH outside of her barracks room. After initially commenting on the status of his security clearance,[3] appellant said, "[W]e're good, right?" Appellant then told SPC HH "he was sexually abused as a child and didn't want to make [her] feel like . . .," before "trail[ing] off" without finishing the sentence. Specialist HH reported the sexual assault later that day and submitted to a forensic sexual assault examination.

At trial, in addition to SPC HH and SPC RS's testimony, the government admitted evidence that male deoxyribonucleic acid (DNA), from which appellant could not be excluded as a contributor, was discovered on a vaginal swab collected during SPC HH's forensic exam. The male DNA could not be "rule[d] in or rule[d] out [as] semen," but the forensic biologist who conducted the DNA test opined the DNA was likely "bodily fluid" instead of another type of "touch-DNA" based on the elapsed time between the assault and forensic exam. The forensic biologist further opined that "oral sex is an unlikely explanation of [the] DNA results."

As part of the defense case-in-chief, trial defense counsel elicited testimony that SPC HH had a character for untruthfulness, and argued SPC HH had a motive to fabricate the sexual assault allegation in order to receive an expedited transfer to Joint Base Lewis-McChord, the duty station of her significant other. The defense also elicited expert testimony that SPC HH was likely in an alcohol-induced "blackout" state for portions of the night.

---

[3] Specialist HH worked in the battalion S-2 section at the time.

**LAW AND DISCUSSION**

In order to assess factual sufficiency, this court takes "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We may not affirm a conviction unless, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are personally convinced beyond a reasonable doubt of appellant's guilt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

In this case, after considering the entire record of trial and making the necessary allowances for not having personally observed the witnesses, we are convinced of appellant's guilt beyond a reasonable doubt. Appellant argues that there is insufficient evidence that he penetrated SPC HH with his penis. We disagree.

Specialist HH testified that her first memory after being in the kitchen with appellant was lying on her back on the bed with appellant penetrating her vagina with his penis. While she stated she never actually saw appellant's penis, that fact is of little consequence in this case. Specialist HH specifically testified that she knew the difference in feeling between digital and penile penetration, and appellant penetrated her with his penis. The DNA evidence, while not expressly confirming the presence of semen, corroborates SPC HH's testimony that appellant penetrated her with his penis. The DNA expert testified that because of the elapsed time between the penetration and the forensic exam, the DNA evidence present in SPC HH's vagina was likely DNA from bodily fluid, but not likely caused by oral sex. Thus, we conclude the source was likely not saliva. Given this evidence, we are personally convinced beyond a reasonable doubt appellant penetrated SPC HH's vulva with his penis.

Appellant also argues the evidence is insufficient to establish a lack of consent. Again, we disagree. Specialist HH testified that as soon as she realized appellant was sexually assaulting her, she started crying. Appellant must have also taken this as a manifestation of lack of consent because he asked if she was crying, and twice asked if she was ok with the penetration. Despite having these questions, appellant did not immediately stop penetrating SPC HH. Additionally, SPC RS corroborated that SPC HH was distraught and crying immediately after the sexual assault. Furthermore, appellant demonstrated his consciousness of guilt by confronting SPC HH a few days later to ensure the two were "good," and implying he did not want SPC HH to feel the way he did when he was sexually abused as a

child. Considering this evidence, we are also convinced beyond a reasonable doubt that appellant penetrated SPC HH's vulva without consent.[4]

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence are AFFIRMED.

Senior Judge BROOKHART and Judge WALKER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] As part of our review, we considered appellant's argument that SPC HH lacked credibility and had a motive to fabricate. However, other evidence in the record corroborates much of SPC HH's testimony (i.e., DNA evidence, SPC RS's testimony about SPC HH's reaction to the sexual assault, expert testimony that SPC HH experienced a "blackout").