# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, RODRIGUEZ, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist TASHAWN E. DRAFTON**
**United States Army, Appellant**

ARMY 20190051

Headquarters, 7th Infantry Division
Timothy P. Hayes, Jr., Military Judge
Colonel Rebecca K. Connally, Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain Alexander N. Hess, JA (on brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Captain Brian Jones, JA; Captain Christopher K. Wills, JA (on brief).

21 September 2020

------------------------------------
SUMMARY DISPOSITION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

Per Curiam:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of two specifications each of aggravated assault and assault consummated by a battery, and one specification of violating a lawful order, in violation of Articles 128 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 928 (2016) [UCMJ]. Contrary to his pleas, the military judge convicted appellant of one specification each of rape and false official statement, in violation of Articles 120 and 107, UCMJ. The convening authority approved the adjudged sentence of a reduction to the grade of E-1, forfeiture of all pay and allowances, confinement for six years, and a dishonorable discharge from the service.

This case comes before us for review under Article 66, UCMJ. Appellant raises two assignments of error, one of which warrants discussion but no relief.*

## BACKGROUND

Appellant and his friend Specialist (SPC) JW met appellant's civilian victim, TJ, in December 2016. TJ began dating SPC JW and, though their relationship ended sometime in 2017, the two continued socializing with appellant and his wife throughout 2017.

On 3 December 2017, SPC JW picked up TJ from a Tacoma hotel. TJ, who lived approximately two hours from Joint Base Lewis-McChord (JBLM) and did not have her own car, then accompanied SPC JW and appellant on several errands. Later that evening TJ, SPC JW, appellant, and appellant's wife went to dinner together. The foursome returned to appellant's off-post apartment and spent the night of 3 December there, with TJ and SPC JW sleeping on the couch.

On the morning of 4 December 2017, the three soldiers (appellant, appellant's wife, and SPC JW), woke up and reported to post, leaving TJ alone at appellant's apartment. At some point that morning, appellant returned to his apartment. Appellant started kissing TJ while they both sat on the couch. She said "no" and rolled over to lay on her stomach. Appellant then sat on TJ's legs, pulled down her sweatpants, and penetrated her vagina with his penis while grabbing both of her wrists with one hand and pinning them above her head. TJ pleaded "stop" and "no" to appellant, and one firm and loud "no" finally caused appellant to stop raping her.

Appellant then left TJ in his apartment, where she remained until appellant's wife came home in the afternoon and they went to the gym together. That evening, TJ rode with appellant and his wife to board her bus home, but missed its departure. TJ then requested a ride from appellant and his wife to SPC JW's on-post barracks, where she spent the night. The following morning, TJ informed SPC JW about the rape at appellant's apartment. SPC JW notified his unit's chain of command.

As part of the investigation, law enforcement investigators interviewed appellant twice. In his first interview, appellant explained away his interaction with TJ as entirely consensual. Days later, at his second law enforcement interview, appellant acknowledged that TJ had told him "no" during the assault, and he had held both of her hands in order to prevent her from stopping the penetration.

---

* We have given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they merit neither discussion nor relief.

## LAW AND DISCUSSION

"A finding of guilt is legally sufficient if any rational fact-finder could have found all essential elements of the offense beyond a reasonable doubt." *United States v. Nicola*, 78 M.J. 223, 226 (C.A.A.F. 2019) (citations and internal quotations omitted). In conducting our legal sufficiency review, we are obligated to draw "every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Robinson*, 77 M.J. 294, 298 (C.A.A.F. 2018) (citations omitted). "As such, the standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation and internal quotations omitted).

With regard to factual sufficiency, we take "a fresh, impartial look at the evidence," applying "neither a presumption of innocence nor a presumption of guilt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). We may not affirm a conviction unless, "after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses," we are personally convinced beyond a reasonable doubt of appellant's guilt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987).

Appellant contends the evidence is both legally and factually insufficient to sustain his conviction for raping TJ. Specifically, appellant argues there is "some evidence" of his reasonable and honest mistake of fact that TJ consented because of the manner in which she allegedly said "no" to him, with "chuckles" and "caveats" about appellant being married, and interjections about the likely reactions of appellant's wife and SPC JW if they were to learn of appellant's actions.

Appellant also urges us to give little weight to his second statement to law enforcement. At the end of the second lengthy interrogation, it allegedly dawned on appellant that the sexual intercourse with TJ might not have been consensual, as viewed by a reasonable person at the time, despite his alleged honest belief in that moment that it was consensual. Appellant now claims he made this statement because law enforcement confused him by asking him hypothetical questions designed to elicit a response that sexual intercourse with someone who says "no" is always rape, regardless of the circumstances or beliefs of the parties to the sexual encounter.

After our complete review of the record of trial, we find, as did the military judge, that TJ's testimony combined with appellant's sworn statement to law enforcement warrants his conviction for rape. As discussed in-depth below, TJ's trial testimony regarding the rape was not only credible but was also corroborated by appellant's statement to law enforcement in many key areas.

3

For instance, both described sitting on the couch after appellant returned to his apartment, and TJ rolling over onto her stomach after appellant began kissing her. Both agreed appellant pulled down TJ's pants and penetrated her vagina with his penis from behind, while TJ told appellant "no" numerous times throughout the incident.

Furthermore, the evidence showed remarkable consistency on not only how appellant held TJ's hands as he raped her from behind, but on his rationale for doing so. In his sworn statement to law enforcement after his second interview, appellant was asked, "[y]ou stated as you removed her pants and she reached back with her hand you then did something. What did you do?" Appellant responded to this open-ended question that he "[g]rabbed both" of TJ's hands and "had a feeling that [he] was doing something wrong and still did not stop." When he was asked by law enforcement why he grabbed both of TJ's hands, appellant responded that he was preventing TJ from stopping the penetration of her vagina with his penis.

In a case that largely hinged on credibility, appellant's credibility was clearly undermined by his sworn statement and admissions to law enforcement during his second interview. Appellant argues "some evidence" of his reasonable and honest mistake of fact concerning consent is based on his belief that TJ was not serious when she said "no" to him at the time of the assault. Significantly, however, appellant specifically retracted this previous assertion in his written sworn statement to law enforcement. Thus, appellant's own statement clearly shows he did not have an honest belief that TJ consented to sexual intercourse.

The evidence was more than legally sufficient to convince the military judge beyond a reasonable doubt as to appellant's guilt and, after our review of the entire record of trial and making appropriate allowances for not personally observing the witnesses, we too are convinced beyond a reasonable doubt that appellant is guilty of raping TJ.

## CONCLUSION

Upon consideration of the entire record, the findings and sentence are AFFIRMED.

Senior Judge BURTON and Judge FLEMING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

4