# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40373**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Godric A. RAMIREZ**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 9 May 2024

————————————

*Military Judge*: Wesley A. Braun (motions and arraignment); Charles G. Warren.

*Sentence*: Sentence adjudged 26 August 2022 by GCM convened at Robins Air Force Base, Georgia. Sentence entered by military judge on 11 October 2022: Dishonorable discharge, confinement for 14 months, and a reprimand.

*For Appellant*: Major Spencer R. Nelson, USAF; Mr. Philip D. Cave, Esquire.

*For Appellee*: Lieutenant Colonel J. Pete Ferrell, USAF; Major Olivia B. Hoff, USAF; Captain Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, GRUEN, and KEARLEY, *Appellate Military Judges*.

Judge GRUEN delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge KEARLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

GRUEN, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, contrary to his pleas, of one specification of knowing and wrongful possession of child pornography, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] Appellant was sentenced to a dishonorable discharge, confinement for 14 months, and a reprimand. The convening authority took no action on findings and approved the sentence in its entirety.

Appellant raises six assignments of error on appeal which we reordered and reworded: whether (1) Appellant's conviction is legally and factually sufficient; (2) government destruction of the sole testable evidence violated Appellant's right to due process; (3) this court erred during its Article 62, UCMJ, 10 U.S.C. § 862, review when it ruled the military judge abused his discretion by abating the court-martial proceedings pursuant to Rule for Courts-Martial 702; (4) the military judge erred when he refused to consider sex offender registration in determining Appellant's sentence; (5) 18 U.S.C. § 922 is constitutional as applied to Appellant's case; and (6) the military judge abused his discretion when he permitted the Government to call a findings witness without giving prior notice to the Defense.[2] We find the evidence in the record does not support factual sufficiency and set aside the sole Charge and its specification, and thus we decline to address the remaining issues.

## I. BACKGROUND

Appellant entered active duty in January 2008. At the time of his court-martial, Appellant was stationed at Robins Air Force Base, Georgia, and had served in the Air Force for approximately 14 years. Appellant opened a Tumblr[3] account in 2012, which was shut down by Tumblr for potential copyright infringement, but later re-established. There is no evidence of attribution to Appellant of wrongdoing for the suspected copyright infringement. In August 2018, Tumblr shut down Appellant's account a second time due to suspicious activity. Specifically, Tumblr was notified of three digital files suspected of portraying child pornography. One file was a video approximately two minutes in

---

[1] References to the punitive articles are to the *Manual for Courts-Martial, United States* (2016 ed.). All other references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant personally raises Issue 6 pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] Mr. JR, an expert witness in the field of digital forensic examination, testified that Tumblr "is a microblogging social media platform" that allows users to post multimedia and other content to a short-form blog.

length (File 1), another was a Graphic Interchange Format (GIF) file (File 2), and the third was a still image in Joint Photographic Experts Group (JPG or JPEG) format (File 3). The Government alleged Appellant uploaded File 3 to his Tumblr account one time on 16 February 2018; his Tumblr account re-blogged[4] File 2 one time on 11 August 2018; and his Tumblr account reblogged File 1 once on 11 August 2018 and twice on 12 August 2018.

## A. Investigation of Appellant's Case

The original investigation of Appellant formally began in February 2019 when Tumblr sent Houston County Sheriff's Office (HCSO) a cyber-tip regarding suspected child pornography affiliated with Appellant's Tumblr account. Subsequently, HCSO investigators determined Appellant was a military member, and thus notified and invited Air Force Office of Special Investigation (OSI) agents to coordinate during the investigation. On 30 April 2019 the HCSO executed a search warrant at Appellant's residence and confiscated 23 electronic devices and some computer discs. During Appellant's court-martial, Sergeant BL of HCSO testified that Appellant and his husband were cooperative in providing access to their home, electronic devices, and passwords to access the devices. During interviews, Sergeant BL showed Appellant the three files from the cyber-tip report, which formed the basis of the investigation. With full knowledge that law enforcement was looking for images of suspected child pornography, Appellant and his husband remained cooperative during all investigative efforts, answering questions and providing continued access to their personal devices and online accounts.

After a comprehensive review of all devices and finding no contraband on any device, HCSO returned the devices to Appellant and his husband, and closed the investigation with no action. Subsequently, Appellant and his husband disposed of all the returned electronic devices because they believed the devices might contain monitoring software as a result of having been in law enforcement custody. Although evidence at trial indicated that OSI agents originally opined they would not go forward with an independent investigation, OSI did in fact open their own independent investigation for potential court-martial purposes, understanding local civilian authorities would not proceed to trial for lack of evidence.

---

[4] Mr. JR testified that "when you reblog, . . . you are simply taking information that's already on the service provider [(Tumblr)] and already in their storage mediums and you are simply creating another link to the content in another place." Furthermore, he confirmed that the contact information for the original poster remains with the post.

After HCSO determined no child pornography was on Appellant's confiscated devices and so returned such devices, Appellant discovered File 3 (the JPEG) on one of his cell phones. Appellant disclosed this finding to OSI agents when they interviewed him after reopening the case in November 2019. Appellant told OSI that while he did not remember this specific image, he did download a lot of pictures of individuals that looked to be over 18 years of age. He estimated he could have 20,000 pornographic pictures and videos depicting "Twink[s][5], Jock[s], [and] some muscular stuff" as these were his preferred genres. During the findings proceedings of Appellant's court-martial, an expert witness—Dr. GY, a pediatrician—testified File 3 was "indeterminate" with respect to whether the image depicted a minor. Appellant told OSI investigators that he did not believe File 3 depicted a minor.

During their investigation, OSI agents did not request Appellant turn over any electronic devices. Even before learning Appellant had disposed of his devices that had been confiscated, examined, and then returned to him by HCSO, OSI agents made no request to seize or re-examine any devices. They did, however, conduct "campus interviews," during which they talked to "all the people that kn[e]w [Appellant] more or less." OSI Special Agent (SA) CH could not recall any derogatory information as a result of the interviews. They also interviewed Appellant at length—Appellant answered all questions asked and remained cooperative throughout. During the interview, OSI agents insisted they had evidence Appellant uploaded Files 1–3 to Tumblr from his personal devices. Appellant maintained he did not upload contraband at any time. At trial, expert testimony confirmed Files 1–3 were uploaded to Tumblr by other user accounts otherwise not associated with Appellant.

## B. Abatement of Appellant's Court-Martial

Appellant was arraigned on 21 January 2021. On 22 March 2021 trial defense counsel filed a motion to abate proceedings due to destruction of evidence which the military judge granted on 24 March 2021. On 26 March 2021 trial counsel filed a motion for reconsideration which became the subject of an oral argument at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), proceeding on 10 May 2021. The military judge declined to reconsider his earlier ruling and upheld the abatement in a written ruling on 18 June 2021. The Government appealed the ruling to this court pursuant to Article 62, UCMJ, and on 30 December 2021, we set aside the military judge's ruling to abate the proceedings. *See United States v. Ramirez*, Misc. Dkt. No. 2021-05, 2021 CCA LEXIS 710, at *22 (A.F. Ct. Crim. App. 30 Dec. 2021) (unpub. op.), *rev. denied*, 82 M.J. 277

---

[5] As described by Mr. JR, expert in digital forensic examination, a "twink" is an adult trying to look young, "more youthful, less mature at times, less body hair, no[ ]body hair . . . a smaller statured person."

(C.A.A.F. 2022). On 22 August 2022, the court-martial resumed with a different military judge, and Appellant was re-arraigned.

## C. Resumption of Appellant's Court-Martial

After abatement was lifted and Appellant's court-martial resumed, the following exchange occurred between the military judge and Mr. JR, a prosecution witness and an expert in digital forensic examinations:

> Q: So, Mr. [JR], just boiling this on down -- all down, in terms of the [Internet Protocol (IP)] address used to upload the suspected child pornography in this case, was that the Cox Cable IP address associated with the address of [Appellant]?
>
> A: No.
>
> Q: What was it?
>
> A: They were two different IP addresses. . . . Both were owned by Verizon.
>
> Q: . . . All right. And, is there any address attributed to the Verizon IP addresses?
>
> A: No, I never saw a subpoena for the Verizon IP addresses.

Further testimony revealed Appellant's Tumblr account was created on 26 December 2012 and Files 1–3 appeared on Appellant's account between February and August 2018. Of more than 800 images and videos on Appellant's Tumblr account, many of which were automatically uploaded by persons other than Appellant, the suspected illicit images numbered a mere three. Testimony from Sergeant BL indicated there were more than 1,000 images of legal adult pornography on the dozens of devices belonging to Appellant and his husband, all of which he thoroughly reviewed and none of which depicted child pornography. With respect to Appellant's Tumblr account, expert testimony confirmed sharing, requesting, and posting adult content would not have been anything unusual for Tumblr at the time Appellant engaged in this conduct since Tumblr did not ban pornography until December 2018. Mr. JR testified he is very familiar with child pornography cases and there was nothing illicit about the terms Appellant used to search for adult pornography on his Tumblr account, to include the term "twink."

On 26 August 2022 the military judge, acting as factfinder and prior to announcing findings, determined it was appropriate to "sua sponte enter

[special][6] findings of fact." In determining "knowing and conscious possession" of the images, the military judge relied on evidence he deemed circumstantial and direct. Specifically, the military judge found as facts "that [Appellant] had a desire to possess the GIF and the particular video by reblogging them," and that there was circumstantial evidence to establish Appellant viewed the files. Specifically, the military judge determined Appellant viewed the images because "Tumblr's default settings are to autoplay all video files and GIFs while Wi-Fi is enabled on a device accessing the [file] and [Appellant] had multiple Wi-Fi enabled devices at his disposal [i]n August 2018 . . . ." He further found Appellant "would have to exercise willful blindness not to [have] be[en] aware of the contents of the video."

With respect to knowing possession, reblogging, and Tumblr settings, Mr. JR provided the following expert testimony on cross-examination:

> Q: Well, first, I guess we don't even know who was actually in fact behind the device, right?
>
> A: Correct.
>
> Q: And then we don't know -- Like, for example, let's just say if [Appellant] is on it, we don't know what he's doing at the time on that device. Like, there could be other [applications] open, correct?
>
> A: All we know is that a post took place. Someone with a device was logged into the [Tumblr] account on this time, and this is the content that was either uploaded or reblogged.
>
> Q: Right. But, generally, in these investigations, you do want to search for evidence related to intent, correct?
>
> A: Yes.
>
> Q: So, with this information, like we don't know if somebody is scrolling through Tumblr, you know, and maybe has a ballgame on.
>
> A: Correct.
>
> Q: And we don't know if -- you know, maybe they're talking to somebody else, right?
>
> A: Correct.

---

[6] The military judge entered written special findings, titled "SPECIAL FINDINGS OF THE COURT-MARTIAL (R.C.M. 918(B))," as Appellate Exhibit XXXII, dated 26 August 2022, consisting of five pages.

Q: And we don't know if it's just, you know, they see a request or they see a popular video and they reblog it, right?

A: Correct.

Q: In these circumstances, there's no proof or there's no evidence in this investigation that [Appellant] or [Appellant]'s account actually watched the video, correct?

A: Correct.

Q: Now, it says "autoplay." Autoplay is Tumblr's setting, correct?

A: Yes.

Q: The user . . . could have a default setting on a phone or a computer that prevents autoplay, right?

A: Yes.

Q: And then the Tumblr records can't tell us if the user actually watched the video, correct?

A: Correct.

Trial defense counsel also questioned their defense expert, Mr. BJ, who testified on direct examination similarly to Mr. JR regarding the significance of Tumblr's default settings:

Q: Okay. So what does it tell you about Tumblr's default autoplay for both GIFs and videos?

A: So after installing this version of the application, I went into the general settings and settings screen here, and it shows that the data saving mode which reads as "Saves data. GIFs and videos wait for your tap when you are not on Wi-Fi." And the slider is split over to the side, and it is highlighted in blue. That indicates that this was enabled. . . . If you notice, that's in contrast to a few down where it says "disable, double tap to like," is slid the other direction and is grayed out. That indicates that it was disabled. That feature was disabled.

Q: Okay. So the user, around this time frame, would have to go into these settings in order to autoplay a GIF and video when on cell-service?

A: Yes. They would either have to do it through this screen or a previous version screen.

Q: And at the end of the day, without the devices, are you able to determine what setting, either Tumblr or a phone may be in?

A: No, I don't have any way of doing it from the date that I was able to review in this case.

Trial defense counsel also questioned Mr. JR about the importance of analyzing electronic devices in a suspected child pornography case, devices which were not available in the case at bar:

Q: All right. And we don't have what else was going on on the device before this reblog or after the reblog, correct?

A: Correct. We only have the Tumblr server logs.

Q: Right. The Tumblr server logs. Right, because if you actually had the device or the devices that [Appellant] had, you could look to the devices and see, perhaps, what else was happening on the phone, right?

A: Yeah. . . .

Q: . . . and in this case, you did not have the devices to search, correct?

A: I did not; correct.

. . . .

Q: And then you'd be looking at -- looking for other items stored on the device; is that right?

A: Yes.

Q: And, potentially, like file names, like how -- you know, if you're looking for potential contraband, you look at how everything is stored?

A: Yeah, if the files were actually saved to the file system; how they're name[d], how they're stored. You know, all of that can give you insight as to a user's thought process or *knowledge* of the files or understanding of what those files might be.

Q: And then you'd be looking at search history, websites visited?

A: Yes, frequently.

. . . .

Q: In order to reblog, you don't have to watch the GIF or watch the movie, right?

A: Correct.

Q: And, in fact, with both the GIF and the video, the contraband nature of it isn't immediately apparent when you just see like

that's -- that first moment you see the GIF or even seconds into or -- 20 seconds into the video?

A: Yeah. I don't think the video is clear on what it's going to display, initially. And the animated GIF itself is still zoomed at the very beginning, you wouldn't be sure what the content was until it zoomed out.

Q: So, if [Appellant] on August 11[, 2018,] sees the GIF -- the GIF and he just hits reblog, reblog. There's no evidence that he actually watched in the GIF?

A: No, we only have the logs that exists here and have an understanding of how Tumblr works . . . . But we don't know how much of each of those files he would have seen.

. . . .

Q: And when he reblogged it, he never makes any comments about it, right?

A: Correct.

(Emphasis added).

Trial defense counsel also questioned Mr. BJ, who testified similar to Mr. JR with respect to the importance of analyzing digital devices in child pornography cases and provided the following facts:

Q: In a case such as this one where the evidence is on Tumblr, what is the relevance of electronic devices?

A: Well, the relevance is essentially there to establish who exactly was interacting with Tumblr. So establishing who is in front of the keyboard or in front of the screen, looking at the history of the device in order to establish that -- determining which device actually was interacting with the unit -- with Tumblr itself; and, also just kind of the circumstance surrounding the interaction.

Q: Right. Would you look at [Appellant's] behavior on his devices?

A: Typically, for an examination, regardless of what size -- side I'm working at the time, you would look at the circumstances surrounding the alleged postings. . . . [P]rimarily, I would be looking for evidence surrounding Tumblr and use that as a starting point. From there, looking at other images that may be on the device, items such as cached Internet, browsing history, any search terms are shown, other indicators of interest in underage.

9

Q: Okay, can you spend -- I guess, what else would you look at in terms of looking for interest in underage?

A: Typically, we run keyword searches for commonly used . . . terms. They would -- There's a commonly used set. But then also during an investigation, you may find more unique ones, and then search from there for those as well.

Q: Would you look at websites visited?

A: Yes.

Q: And would you look for maybe folders on a device and how things are labeled?

A: Yes. Anything that indicated a significant step of the individual to preserve or make copies of data that make [sic] contain any children in a sexual position or state. So that would -- if it's saved into a specific user folder with a specific name, then it tends to show that there was effort made in order to preserve that.

In addition to the military judge concluding circumstantial evidence of reblogging and Tumblr's account settings supported his special findings, the military judge found "direct evidence of knowledge of sexually explicit content [was] evidenced by [a] Spanish language comment in simple terms[,] readily comprehensible by a Spanish speaker with even modest proficiency . . . ." Specifically, the military judge was referring to the Spanish word *morrito*. The military judge expressed that Appellant, who is Guatemalan, had a "limited working plus proficiency," which "would [have] more than enable[d] him to understand this one sentence expressed in simple, plain language." The military judge concluded Appellant had a "limited working plus proficiency," in part, due to a proficiency test Appellant took in 2010. During findings, the trial counsel called Chief Master Sergeant (CMSgt) AE as a witness fluent in Spanish to interpret the Spanish comment the military judge referred to in his special findings. In response to questions by trial counsel, CMSgt AE testified as follows:

Q: First of all, what is the Spanish content and what is the translation of that content?

A: So the top left corner and blue, it says guadalajaragay. Guadalajara is a location. Gay is not a Spanish word. It looks like a colon. And underneath, what looks like a video, it says -- and I'll say it in Spanish first and then translate.

. . . .

And the translated version: Woow, although it's spelled "Woow," it's actually wow; *en* is in; *mis* is my; *tiempos*, times; *yo veía* I. *Veía* is see; *los* is them; [P]ower Rangers; *a esa*, at that age; *y*, and; *este*, is this; *morrito* -- *morrito* is a kid but it is regional. Typically, Mexicans use that word. That is not something that a lot of countries would use. I can tell you that my family it [sic] Mexican and the only time I've ever heard is in that particular region. . . .

In follow-up to this testimony, the military judge questioned the witness as follows:

Q: In your personal experience and knowledge of the Spanish language, is this [*morrito*] term that you said is a Mexican regional dialect, recognizable by people who are native Spanish speakers from Guatemala?

A: Possibly. If you're looking at South America, you're looking at Mexico, Ecuador, and Nicaragua. I spent 4 months in Nicaragua and not quite the same, right again, soda, coke, pop, do they use it? We all know what soda means. We all know a coke may or may not be. But do we use that terminology?

. . . .

Q: Understood. Understood. So, in that context, someone could -- might recognize like in English, for example, someone says pop, like an English speaker would be like, okay, I know you're saying pop but they might not necessarily recognize the context of the word pop. Is that what you're trying to get across there?

A: No. I mean, if you don't know what pop is. If somebody's offering you the pop; you'd ask, "What's a pop?"

. . . .

Q: . . . Do you have an opinion, based upon your qualifications as someone fluent in the Spanish language as to whether a native Guatemalan Spanish speaker would comprehend this [*morrito*] term; not use it, but comprehend it?

A: I couldn't answer that, sir.

[Military Judge]: Fair enough.

[CMSgt AE]: I don't know, honestly.

In February 2019, a Tumblr user, not Appellant, uploaded File 3 to Appellant's Tumblr account. During Appellant's trial, Dr. GY testified that he could not determine if File 3 actually depicted a minor. Appellant responded to this

image, "Share." In his special findings, the military judge found that the response by Appellant of "'Share' in a Tumblr chat log response [to] another user who had messaged [Appellant] . . . 'Hey man, how old and where at? Love Under 15,'" was evidence Appellant "knowingly and consciously possessed this obscene image." This response of "Share" was notably a response to File 3, which Appellant told OSI agents he did not believe looked like an image of a minor. With respect to Appellant's position on "sharing" illicit images, experts testified about Appellant's chat log responses to Tumblr patrons attempting to engage Appellant in illicit file sharing. Expert testimony previously confirmed the "sti[*****]ner" account belonged to Appellant. Mr. JR testified with respect to trial counsel's questions as follows:

> Q: Flipping to page 3 of Prosecution Exhibit 5.[7] What are we looking at here?
>
> A: It's a conversation between the user "ja[****]c3" and the "sti[*****]ner" account.
>
> . . . .
>
> Q: Okay. In relationship to the charges in this case, were there any relevant pieces of this conversation?
>
> A: Yes.
>
> Q: And what are those?
>
> A: There's communication about boys, kind of a pity that there's no boys, and the sti[*****]ner account respon[ded], "I[']m not what you into, man." The account that is communicating with the sti[*****]ner account says, "Thought you liked boys." The sti[*****]ner account says "guys, yes . . . some call the boys I like butts."[8]
>
> . . . .
>
> Q: Okay. Going to page 4 of Prosecution Exhibit 5. What are we looking at here?
>
> A: It's another conversation with a different user but still the sti[*****]ner account as well.
>
> Q: Okay. What's the date range on this conversation?

---

[7] The Index of Exhibits identifies Prosecution Exhibit 5 as "Tumblr Private Messages, 1 Feb [20]18 – 6 Aug [20]18, 5 pages."

[8] (Omission in original).

A: So, it's August for all of these of 2018.

Q: Was there any relevant piece of this conversation for the charges in this case?

A: There is. There's some message content regarding the type of content that the local account user, sti[*****]ner, is willing to trade.

Q: Okay. And what type of content is that?

A: He states, "I[']m not into trading on myself or kids."

In addition to the military judge's findings of fact, the military judge found "circumstantial evidence exist[ed] that [Appellant] decided to reblog the video three times in particular because he was purposefully seeking out one of the persons depicted in the video," and that Appellant's "cooperation with law enforcement did not create a reasonable doubt in the mind of the [c]ourt that [Appellant] knowingly and consciously possessed child pornography."

## II. DISCUSSION

Appellant argues that his conviction for possession of child pornography is legally and factually insufficient. Specifically, Appellant argues that (1) this court should not approve a case with destroyed evidence; (2) the military judge did not "fairly" or "reasonably" resolve conflicting evidence; and (3) the Government never overcame an affirmative defense—specifically, the defense that Appellant "possessed less than three images of child pornography and . . . took reasonable steps to destroy each such image; or reported the matter to a law enforcement agency and afforded that agency access to each such image." We do not herein decide legal sufficiency because we agree with Appellant the facts of this case do not support knowing and wrongful possession of the three files in issue. We conclude the facts in this case are insufficient to find each element of the offense beyond a reasonable doubt.

### A. Law

We review issues of factual sufficiency de novo. Article 66(d), UCMJ, 10 U.S.C. § 866(d); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the

evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399).

The elements as charged, which the Government must prove beyond a reasonable doubt for possession of child pornography in violation of Article 134, UCMJ, are: (1) that, between on or about 16 February 2018 and on or about 13 August 2018, Appellant knowingly and wrongfully possessed child pornography; and (2) that, under the circumstances, the conduct of Appellant was of a nature to bring discredit upon the armed forces. *See Manual for Courts-Martial, United States* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 68b.b.(1).

With respect to "knowing,"

> An accused may not be convicted of possessing . . . child pornography if he was not aware that the images were of minors, or what appeared to be minors, engaged in sexually explicit conduct. Awareness may be inferred from circumstantial evidence such as the name of a computer file or folder, the name of the host website from which a visual depiction was viewed or received, search terms used, and the number of images possessed.

2016 *MCM*, pt. IV, ¶ 68b.c.(2).

With respect to "wrongfulness,"

> Any facts or circumstances that show that a visual depiction of child pornography was unintentionally or inadvertently acquired are relevant to wrongfulness, including, but not limited to, the method by which the visual depiction was acquired, the length of time the visual depiction was maintained, and whether the visual depiction was promptly, and in good faith, destroyed or reported to law enforcement.

2016 *MCM*, pt. IV, ¶ 68b.c.(9).

With respect to "possession,"

> "Possessing" means exercising control of something. Possession may be direct physical custody like holding an item in one's hand, or it may be constructive, as in the case of a person who hides something in a locker or a car to which that person may return to retrieve it. Possession must be knowing and conscious. Possession inherently includes the power or authority to preclude control by others. It is possible for more than one person

14

> to possess an item simultaneously, as when several people share control over an item.

2016 *MCM*, pt. IV, ¶ 68b.c.(5).

**B. Analysis**

Our basis for finding factual insufficiency rests squarely on the lack of evidence to support the knowing and wrongful element of possessing child pornography. While there is some evidence to question the sufficiency of proof to support the element of possession, we make no findings with respect to possession. Additionally, for the purposes of our analysis, we assume without deciding that at least two of the three suspected files which appeared on Appellant's Tumblr account depicted child pornography—File 1 and File 2. While we agree there are aspects of Appellant's three stated bases to question factual sufficiency, we decline to address those issues independently.

In order to convict a person of possessing child pornography under Article 134, UCMJ, the finder of fact must be convinced beyond a reasonable doubt that the person knew that he possessed the child pornography. In this case, the evidence the factfinder relied upon for finding the prerequisite knowledge was the fact that Appellant reblogged File 2 one time, and reblogged File 1 three times in approximately a 24-hour period; that Appellant responded "Share" to an unknown user on Tumblr who uploaded File 3 to Appellant's Tumblr account; and an inference that Tumblr had an automatic play mode when a video or GIF is shown on an electronic device.

As the law states and experts testified, in suspected child pornography cases, expert digital analysts and law enforcement agents look for circumstantial evidence "such as the name of a computer file or folder, the name of the host website from which a visual depiction was viewed or received, search terms used, and the number of images possessed" in order to support the element of knowing possession. 2016 *MCM*, pt. IV, ¶ 68b.c.(2). In this case, this type of information could not be ascertained because such information is obtained by analyzing the digital devices suspected of containing the information. While some information could be gleaned from the Tumblr investigation file, it was lacking in information. Looking at the terms Appellant searched for on Tumblr we see no evidence of his interest in child pornography. This, combined with the small number of files in issue, support a finding that Appellant was not looking for nor soliciting child pornography.

In this case, the digital devices did not exist for OSI agents to analyze. This is because the HCSO—the lead agency investigating the alleged crime—seized and analyzed the digital devices in question, determined there was no evidence of a crime on any device, and then returned the devices to Appellant, informing

him the investigation was closed due to finding no evidence with which to prosecute.

When assessing wrongfulness, the factfinder must be diligent to weigh facts and circumstances of evidence that child pornography was unintentionally or inadvertently acquired. Facts that would support or vitiate the "wrongfulness" element include, but are not limited to, "the method by which the visual depiction was acquired, the length of time the visual depiction was maintained, and whether the visual depiction was promptly, and in good faith, destroyed or reported to law enforcement." 2016 *MCM*, pt. IV, ¶ 68b.c.(9).

In this case, Appellant's Tumblr account acquired the suspected files of child pornography by sources other than Appellant uploading such files to his account. While the military judge seemed to find as a matter of fact that Appellant himself uploaded these files to his Tumblr account, the expert testimony is clear that such images were uploaded to Tumblr by accounts otherwise unaffiliated with Appellant. File 3 was uploaded to Appellant's Tumblr account on 1 February 2018 by a person other than Appellant. This was the only suspect file of the three files present on any of Appellant's 23 devices and the file was found by Appellant after HCSO returned his devices. This was also the image that was "indeterminate" as depicting a minor. Appellant, without prompting, informed OSI agents that this image appeared on one of his personal devices when they interviewed him close in time to Appellant's discovery of the image. There is no evidence Files 1 or 2 appeared on any of Appellant's devices, and Tumblr took them down close in time to them appearing on Appellant's Tumblr account at the same time they closed his account.

As we have stated, it is questionable whether File 3 depicts a minor. While the military judge made an independent determination that the image was child pornography, the basis of his determination is inconsistent with expert testimony regarding the description of "twinks," *i.e.*, the expert testimony by Dr. GY, and Appellant's statement to OSI agents that he did not believe this image depicted a minor. It is also inconsistent with the observations of the HCSO investigators who returned Appellant's devices to him with this image still on a device stating they found no images of contraband on any device they reviewed. Given the plethora of pornographic images on Appellant's electronic devices and Tumblr account and Appellant's interest in "twinks," it is reasonable to find that if Appellant had seen this image on his Tumblr account, he would have viewed it as a non-contraband image of an adult within the genre of adult pornography he preferred, consistent with the many other legal images he possessed. It also makes sense that if he did not view this as anything other than adult pornography of the genre he preferred, that he might download the image from Tumblr to his personal device. Because an accused may not be convicted of possessing child pornography if he did not know the images were of

minors, or what appeared to be minors, engaged in sexually explicit conduct, we find that with respect to this specific image, Appellant did not know it depicted a minor, or what appeared to be a minor, and thus, there would be no need for Appellant to delete or report such image.

With respect to the video (File 1) and the GIF (File 2) uploaded to Appellant's account in August 2018, the evidence does not support an inference of proof beyond a reasonable doubt that Appellant knew they existed on his account. Appellant did comment "Share" to File 3, but we have already determined that there is insufficient evidence to support beyond a reasonable doubt that this was a picture of a minor, or what appeared to be a minor. While Appellant reblogged the GIF and video, according to expert testimony, there is no proof Appellant was the one using his account during the reblogs. And even if we assume Appellant conducted the reblogs, there is insufficient evidence to prove he knew the content of the files he reblogged. From a very basic evidential standpoint, not having evidence of who engaged in the conduct leaves reasonable doubt as to guilt, especially if there is also insufficient evidence about the knowledge of the reblogger regarding the content of the files.

Assuming arguendo it was Appellant who reblogged the GIF and video, expert testimony is clear that insufficient evidence exists to prove Appellant knew what was depicted in the images. Mr. JR testified that you cannot tell the explicitness of the files unless and until they are played. The military judge's special findings relied on testimony that Tumblr has an automatic play setting. However, this testimony was expanded upon and countered by other expert testimony regarding an inability to know if Tumblr was set to automatically play and the fact that each device could also have settings blocking automatic play of such files. Furthermore, the military judge determined that because Appellant "had multiple Wi-Fi enabled devices at his disposal" that he must have seen the GIF and video. This finding of fact was inconsistent with expert testimony stating there was no way to know if any device was connected to Wi-Fi at any given time. Additionally, Mr. BJ testified that with respect to Tumblr's autoplay, a user, around this timeframe in 2018, would have to go into the settings in order to autoplay a GIF and video when on cell service and there was no way for Mr. BJ to tell what settings either Tumblr or any device might have been accessible or available at the time of Appellant's charged offense. With no way to know what device accessed Tumblr or Tumblr settings at the time the files were reblogged, we find these points do not support knowing possession.

Simply put, we know Appellant did not upload these files because in response to the military judge's question—"[I]n terms of the IP address used to upload the suspected child pornography in this case, was that the Cox Cable IP address associated with the address of [Appellant]?"—the expert witness

answered, "No," and testified, "They were two different IP addresses." Regarding knowledge and intent, the expert stated, "All we know is that a post took place. Someone with a device was logged into the account on this time, and this is the content that was either uploaded or reblogged." He also answered affirmatively to the following questions by trial defense counsel: "[G]enerally, in these investigations, you do want to search for evidence related to intent, correct?" and "In these circumstances, there's no proof or there's no evidence in this investigation that [Appellant] or [Appellant's] account actually watched the video, correct?" and "[T]hen the Tumblr records can't tell us if the user actually watched the video, correct?" The expert answered negatively to the following question: "[A]t the end of the day, without the devices, are you able to determine what setting, either Tumblr or a phone may be in?"

In answering questions regarding the importance of analyzing the actual devices used to view Appellant's Tumblr account—devices that did not exist to be analyzed by the experts preparing for trial—experts testified that this is where you would find evidence, if it existed, of intent and knowledge. Specifically, Mr. JR testified that if you are looking for potential contraband, you would look to how things are stored on electronic devices saying, "Yeah, if the files were actually saved to the file system; how they're name[d], how they're stored. You know, all of that can give you insight as to a user's thought process or knowledge of the files or understanding of what those files might be." He added that frequently he would look at search histories and websites visited. In response to trial defense counsel's questioning, Mr. BJ also testified that the relevance of being able to analyze digital devices in a case where the suspected child pornography images were found on Tumblr, a public site, is essentially

> to establish who exactly was interacting with Tumblr. So establishing who is in front of the keyboard or in front of the screen, looking at the history of the device in order to establish that -- determining which device actually was interacting with the unit -- with Tumblr itself; and, also just kind of the circumstance surrounding the interaction.

Mr. BJ went on to say, "Typically, . . . I would be looking for evidence surrounding Tumblr and use that as a starting point. From there, looking at other images that may be on the device, items such as cached Internet, browsing history, any search terms are shown, other indicators of interest in underage." Mr. BJ elaborated, "Anything that indicated a significant step of the individual to preserve or make copies of data," and "if it's saved into a specific user folder with a specific name, then it tends to show that there was effort made in order to preserve that."

With respect to reblogging, Mr. JR testified that a person does not have to watch a GIF or movie in order to reblog it on Tumblr. Specific to the GIF and

video (Files 1 and 2) at issue in Appellant's case, Mr. JR stated, "I don't think the video is clear on what it's going to display, initially. And the animated GIF itself is still zoomed at the very beginning, you wouldn't be sure what the content was until it zoomed out." He further confirmed when the GIF was re-blogged, no comments accompanied any reblog.

The fact the still image (File 3) uploaded to Appellant's account in February 2018 was responded to with "Share," was a point the military judge used in determining Appellant must have had knowledge because "Share" showed he wanted to engage in exchange or receipt of child pornography. In addition to the nonconclusive nature of that picture as child pornography and the lack of evidence regarding what of the image or information of sender, if anything, Appellant saw before responding, there were other messages found by digital forensic experts to include exculpatory statements made by Appellant which shed light on his mens rea regarding this matter. Specifically, in a conversation between users identified as "ja[****]c3" and "sti[*****]ner"—on Appellant's Tumblr account—Mr. JR testified, "There's communication about boys, kind of a pity that there's no boys, and the sti[*****]ner account respon[ded], 'I[']m not what you into, man.' The account that is communicating with the sti[*****]ner account says, 'Thought you liked boys.' The sti[*****]ner account says 'guys, yes . . . some call the boys I like butts.'" (Omission in original).

In another conversation between sti[*****]ner and a different account holder, Appellant makes clear, he is "not into trading on [him]self or kids." These are not statements made to law enforcement agents for the first time after coming under investigation, which might indicate they were self-serving on the part of Appellant. These statements were made to other Tumblr users and indicate he genuinely did not want to receive images of minors nor be involved with others who were interested in personal pictures of Appellant or children. In light of the expert testimony and words of Appellant, we find reasonable doubt exists regarding the knowing and wrongful elements of the offense.

The military judge made two additional findings of fact we feel we must address. The first finding of fact is the "direct evidence" of knowing possession based on the sexually explicit comment written in Spanish in the comments to the video (File 1). With respect to this Spanish statement, there is no evidence Appellant saw the statement. Even if he had, CMSgt AE, called as a witness fluent in Spanish, said the word referring to a kid in the statement—*morrito*—is a regional word specific to a region in Mexico. Appellant is from Guatemala. Moreover, the military judge assumed proficiency of Appellant's Spanish speaking capabilities. It seems a stretch to assume that eight years after taking an Air Force proficiency test and receiving mid-level proficiency scores, Appellant would be as proficient, proficient at all, or understand slang specific to

a region of Mexico. CMSgt AE was clear in her testimony that she honestly could not testify as to whether Appellant would have known the meaning of that word. We find insufficient evidence to determine that Appellant saw the statement, let alone if he had, clearly understood the meaning. Thus, we do not find this is a basis supporting knowing and wrongful possession.

The second finding by the military judge related to the fact that two people in File 1 and File 2 each donned a silver bracelet, and therefore Appellant must have been searching for images of this person, and therefore must have viewed and known the contents of the images, and that is why he reblogged the video. With respect to this second finding, we do not find such a conclusion consistent with the totality of the circumstances in the record and therefore we do not find this is a basis supporting knowing and wrongful possession.

We took a fresh, impartial look at the evidence, applying neither a presumption of innocence nor a presumption of guilt and made our own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt. After weighing all the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are not convinced of Appellant's guilt beyond a reasonable doubt. *See United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000) (citation omitted).

### III. CONCLUSION

The findings of guilty and the sentence are **SET ASIDE**. The Charge and its specification are **DISMISSED WITH PREJUDICE**. All rights, privileges, and property, of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision, are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c), 875(a).

FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court