# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
FLEMING, PENLAND, and EWING[1]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist ANDRES F. CUESTA**
**United States Army, Appellant**

ARMY 20230024

Headquarters, 21st Theater Sustainment Command
Charles L. Pritchard, Jr., Military Judge
Lieutenant Colonel William J. Stephens, Acting Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Robert W. Rodriguez, JA; Captain Justin L. Watkins, JA (on brief); Colonel Philip M. Staten, JA; Major Robert W. Rodriguez, JA; Captain Justin L. Watkins, JA (on reply brief).

For Appellee: Colonel Christopher B. Burgess, JA; Colonel Jacquline J. DeGaine, JA; Major Justin L. Talley, JA; Lieutenant Colonel Anthony O. Pottinger, JA (on brief).

13 February 2025

---------------------------------
SUMMARY DISPOSITION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

EWING, Judge:

Appellant turned up unexpectedly in two separate female soldiers' quarters following parties, once in Kansas and once in Germany. An enlisted panel convicted him of sexually assaulting the Kansas victim twice and of unlawfully entering the Germany victim's barracks room and sexually harassing her, in violation of Articles 120, 129, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 929, 892 [UCMJ], respectively. The military judge sentenced appellant to a dishonorable discharge and an aggregate sentence of 13 years and 80 days. Appellant's lone

---

[1] Judge EWING took final action in this case while on active duty.

briefed assignment of error is a sufficiency challenge to his sexual harassment conviction (for which he received no confinement). While we analyze this claim and one other issue, we ultimately provide no relief and affirm.[2]

## BACKGROUND

### A. Kansas

Appellant and ███████████████ were fellow guards at the disciplinary barracks at Fort Leavenworth, Kansas.[3] The two went to an on-base party there in September 2020 at another soldier's home. Both drank alcohol. ███████████, who lived only a few doors down, did not remember leaving the party. At the end of the night, two fellow partygoers (but not appellant) walked ██████ back to her quarters where they got her inside and closed the front door. The two friends described her as slurring her speech and needing help walking, but safely home. Appellant was nowhere to be seen.

In ██████'s next memory, she was on her bed in her second-floor bedroom with appellant penetrating her vagina with his penis. She pushed appellant off and "crawled" to her children's room (they were away in California) to "try to get away" from appellant. Appellant followed her, lay down next to her, and penetrated her vagina with his penis a second time. ███████████ then vomited on the bedroom floor, wall, bathroom floor, and in the bathroom. She then returned to her own bedroom and went to sleep.

The next morning ██████ had vaginal pain and bleeding, and bruises on her side. She had no memory of appellant entering her home. ███████████ knew appellant from work but had not socialized with him prior to the party, where she did not recall showing any sexual interest in him (and had none). She also testified that she had not consented to sex with appellant. ███████████ did not immediately report the incident but did so a few months later after she heard that appellant had been "SHARPed" again at his next duty station (see below).[4]

---

[2] We have also given full and fair consideration to all other matters appellant has raised, including matters he personally raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

[3] ███████████ was a sergeant by the time of appellant's court-martial.

[4] While appellant did not testify on the merits, the defense's clear theory was that ██████ could have provided at least apparent consent while in an alcohol-induced "blackout" or memory loss. In this vein, the defense pointed out that ██████'s shorts and underwear were on the first floor the next morning, and she had no memory of how her clothes came to be there. To this end, the military judge instructed the panel on mistake of fact as to consent. The panel rejected this theory.

*B. Germany*

Three months later in December 2020, appellant had been reassigned to a post in Germany where he attended another party, this time in the barracks on Sembach Kaserne. After the barracks party, ██████████████████████, whom appellant had just met that night, went to a friend's room to sleep.[5] The barracks' video security system captured appellant entering ██████'s barracks room door at 0835 the morning after the party. Appellant had visited ██████'s room briefly along with other soldiers the night before so knew where she lived.

When ██████ returned to her room at 1030 she was surprised to see appellant asleep in her bed with only his head "peeking out" from the covers. She immediately woke him and told him to leave. Appellant refused, said that he was "embarrassed," and asked ██████ to "help" him while nodding his head towards (per ██████) "his penis." She recognized this as a request for oral sex, responded "no," left the room, and called a friend for help. The friend—a male Specialist who was a sergeant by the time of trial—came, impersonated ██████'s noncommissioned officer, and told ██████ that appellant had to leave her room. Appellant left, and ██████ immediately reported the incident.

**LAW AND DISCUSSION**

Appellant's only briefed assignment of error is a challenge to the factual sufficiency of the government's evidence for his Article 92, UCMJ, violation for sexual harassment. While we discuss that claim, it is without merit. We also address the propriety of the military judge's aggregate sentence for the two separate Kansas sexual assaults (one of appellant's *Grostefon* claims), but that issue likewise does not merit relief.

*A. Sufficiency*

This court reviews questions of factual sufficiency *de novo*. *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017) (internal citation omitted).

Because this offense occurred in December 2020, the applicable test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, the members of the service court are themselves convinced of appellant's guilt beyond a reasonable doubt." *Id.* (cleaned up). This court applies "neither a presumption of innocence nor a presumption of guilt" but "must make its own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). This "does

---

[5] ██████████████████████ was a specialist (E-4) by the time of trial.

3

not mean that the evidence must be free from any conflict or that the trier of fact may not draw reasonable inferences from the evidence presented." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal citation omitted).

Based on appellant's gesture towards his penis and request for "help" while in ██████'s bed, the panel convicted appellant of violating Article 92, UCMJ, for, in turn, violating the relevant version of Army Regulation 600-20 (24 July 2020). Paragraph 7-7(a)(3) of that regulation defined "sexual harassment" in pertinent part as "Any deliberate or repeated unwelcome verbal comment or gesture of a sexual nature by any member of the Armed Forces or Civilian employee of the DoD."

Appellant contends that his gesture towards his penis and request for "help" was factually insufficient to convict him for (as charged) asking ██████ to "touch his penis," or words to that effect, and thus violating the Army Regulation on sexual harassment. We disagree. In the context of appellant's surprising and unwelcome presence in ██████'s bed, and his refusal to leave, the meaning of his request for "help" and gesture towards his penis was patently obvious, as evidenced by ███ s wholly reasonable and immediate reaction to the same. As such, we are convinced of appellant's guilt beyond a reasonable doubt.

### B. Aggregate Sentences for the Kansas Assaults

The military judge sentenced appellant to consecutive 6-and-7-year terms of incarceration for the two Kansas sexual assaults; 6 years for the master bedroom assault and 7 for the children's room assault (and 80 days for unlawful entry in Germany and no confinement for the Article 92, UCMJ, violation). Appellant has challenged the propriety of the military judge's aggregate sentences in his *Grostefon* matters, noting that the military judge rejected his unreasonable multiplication of charges (UMC) motion and claiming that the military judge should have merged the two sexual assault convictions for sentencing.

We review preserved UMC claims for an abuse of discretion. *See, e.g., United States v. Pauling*, 60 M.J. 91, 95 (C.A.A.F. 2004). We note that whether we conceptualize this as a UMC issue under *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001), or a consecutive/concurrent sentencing issue that turns on "same act or transaction" language we recently discussed in *United States v. Batres*, ARMY 20220223, 2024 CCA LEXIS 358, at *8-19 (Army Ct. Crim. App. 23 Aug. 2024) (mem. op.), the analysis in both instances dovetails back to a factual question of whether the master bedroom assault and children's room assault were separate and distinct.

The military judge held that they were, and we agree. While the record does not cast much light on the timing between the master bedroom and children's room assaults, we agree with the military judge that they were separate and distinct crimes

warranting separate punishments. The military judge applied the correct legal framework as to both the UMC and "same act or transaction" issues just prior to and after announcing appellant's sentence. The military judge noted the two assaults were "divisible and not interdependent," that they reflected a "similar but separate criminal intent," were separated by "time and location," and "each represented an act that was carried to completion." ███████ pushed appellant off following the first assault and "crawled" to another room, where she ultimately became violently ill. Appellant could have easily disengaged at this point, but he did not. Rather, he pursued ███████ to the second room and assaulted her again.

## CONCLUSION

The findings of guilty and sentence are AFFIRMED.

Senior Judge FLEMING and Judge PENLAND concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court